No. 25-10451

---

In the United States Court of Appeals
for the Fifth Circuit

---

Al Gilani,
Plaintiff-Appellant

v.

UTSW Medical Center
Defendants-Appellees

---

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division

---

## BRIEF OF APPELLANT

---

/s/ Elizabeth Alvarez
Elizabeth Alvarez
GUEST & GRAY, P.C.
315 S. Bois D'Arc St.
Forney, Texas 75126
Tel: 972-564-4644
Fax: 866-209-9785
TX Bar No. 24071942

## TABLE OF CONTENTS

Identity of Parties & Counsel ...................................................................4

Certificate of Interested Persons..............................................................5

Statement Regarding Appellant's Request for Oral Argument Pursuant to 5th Cir.

R. 28.2 .......................................................................................................6

I.   Introduction .......................................................................................11

II.  Jurisdictional Statement ...................................................................12

III. Statement of the Issues ....................................................................13

IV.  Statement of Facts.............................................................................14

    A.   A. The Falsely Engineered Failure in Global Health Summer Research Elective (Summer 2018)                                             14

    B.   Unjustified Academic Probation and Manipulated GI Block Exam (October – December 2018)                                                    15

    C.   Flawed Appeals Process and Expulsion (January – February 2019)    16

    D.   Post-Dismissal Obstruction and Defamation (July 2019 – Present)    17

    E.   Underlying Discriminatory Intent                                      18

V.   Staement of the Case ........................................................................18

VI.  Summary of Argument......................................................................22

VII. Argument One: Public University Students Maintain Substantive Due Process

    Rights to a Continued Education under Regents of Univ. of Mich. v. Ewing .23

VIII. Even If Gilani's Dismissal Was Academic, the Court Erred in Failing to Find

UTSW'S Actions Constituted a Substantial Departure From Accepted

Academic Norms ............................................................................29

A.   Judicial Deference to Academic Decisions Requires An Exercise of
Professional Judgement to Satisfy Due Process                    30

B.   UTSW's Dismissal of Gilani Was Arbitrary and Capricious and Failed to
Satisfy Due Process  - Gilani's Complaint Details Behavior Which IS
Beyond the Pale and Deviates from The Reasonable Exercise of Academic
Decision Making                                                  32

1.   UTSW Fabricated and Manipulated Gilani's Grades to Artificially
Engineer His Failure                                        32

2.   UTSW Offered Gilani Only a Compromised and Bad-Faith Appeal
Process                                                     34

C.   Gilani Has Preserved Error and Maintained His Right To Make Just This
Argument in Front of This Court                                  36

IX. Conclusion & Plea for Relief ............................................................40

Certificate of Service ............................................................................43

Certificate of compliance with Fed. R. App. P. 32 & 5th Cir. R. 32.2 ....................43

# IDENTITY OF PARTIES & COUNSEL

**DEFENDANTS:**

UNIVERSITY OF TEXAS SOUTHWESTERN
MEDICAL CENTER

ANGELA MIHALIC, M.D.

BLAKE BARKER, M.D.

W.P. ANDREW LEE, M.D.

DWAIN THIELE, M.D.

**DEFENDANTS' COUNSEL:**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

BRIAN A. ASLIN
Attorney-in-Charge
Texas Bar No. 24106850
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4196
Facsimile: (512) 320-0667
brian.aslin@oag.texas.gov

**PLAINTIFF:**

AL GILANI

**PLAINTIFF'S COUNSEL:**

ELIZABETH ALVAREZ
Texas Bar No. 24071942
alvarez@guestandgray.com

SCOTT GRAY
Texas Bar No. 24043701
Scott@guestandgray.com

GUEST & GRAY, P.C.
112 S. Bois D'Arc St.
Forney, Texas 75126
Telephone: (972) 564-4644
Facsimile: (866) 209-9785

## CERTIFICATE OF INTERESTED PERSONS

Appellant certifies the foregoing listed Parties & Counsel have an interest in the outcome of this case as described by FED. R. APP. P. 28.2. These representations are made such that the panel may evaluate possible disqualification or recusal.

/s/    Elizabeth D. Alvarez

Elizabeth D. Alvarez

Lead Counsel of Record for Appellant Gilani

**STATEMENT REGARDING APPELLANT'S REQUEST FOR ORAL ARGUMENT**

**PURSUANT TO 5TH CIR. R. 28.2**

Mr. Gilani believes that oral argument would be of assistance to the Court in deciding this matter. This case turns on two issues: (1) whether the dismissal of Mr. Gilani by the Appellees from the University of Texas Southwestern Medical School was academic or disciplinary; and (2) if it was academic, whether or not the specific conduct Mr. Gilani's petition attributes to UTSW and its administration meets the standard this Court set out in *Doe v. Harrell*[1] plausibly alleging that the Defendant UTSW's conduct was "beyond the pale of reasonable academic decision making" because it was "such as substantial departure from accepted academic norms as to demonstrate that the [officials] responsible did not actually exercise professional judgement."[2] That is to say, whether the behavior of the university failed to meet even the lower standard for due process for such dismissals because their behavior was arbitrary and capricious. These two issues thread a very small needle and while Mr. Gilani filed his original petition in 2021, he has spent the last 4 years in motion practice, never once having an opportunity to be heard in person by any federal judge to convey the nuances of this delicate and complex situation.

---

[1] 841 F. App'x 663 (5th Cir. 2021).

[2] *Id.* At 670.

But beyond that, there are issues underlying this discussion and any decision this Court makes, which may implicate more than just the parties. For instance, whether or not the application of *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214 (1985) must always assume that a public university student has a substantive due process right to a continued education would impact more than Mr. Gilani or even students similarly situated at other public universities. It would also impact the rights of students accused of sexual assault or violent acts. And Mr. Gilani's position in the District Court and here may require this court to rule on or assume without deciding whether or not an academic dismissal may serve as a pretext for what is really a disciplinary misconduct dismissal. To aid the Court in navigating these waters and conveying the intricacies of the facts as they unfurled in Mr. Gilani's life in such a way that adequately offers him an opportunity to make his argument for what he sees as his right to due process before his dream to be a doctor was forever denied him, while still keeping the Court within the bounds of those issues it wishes to impact, Appellant strongly believes oral argument will be a powerful tool for the Court in evaluating this matter.

TABLE OF AUTHORITIES
TABLE OF AUTHORITIES

CONSTITUTIONAL PROVISIONS

U.S. CONST. AMEND. XIV……...………………………………………….12,13

STATUTES

28 U.S.C. § 1331…………………………………………...…………..……12
42 U.S.C. § 1983…………………………………………...…………..……12

CASES

UNITED STATES SUPREME COURT CASES

*Ashcroft v. Iqbal,*
         556 U.S. 662 (2009)………………………………………...28,31,33,38,41

*Bell Atl. Corp. v. Twombly,*
         550 U.S. 544 (2007)…………………………………………30,31,38,39,40

*Bd. of Curators of Univ. of Mo. v. Horowitz,*
         435 U.S. 78 (1978)………………………………………….24,25,33,35,41

*Goss v. Lopez,*
         419 U.S. 565 (1975)…..………………………………………………25,26,28

*Regents of Univ. of Mich. v. Ewing,*
         474 U.S. 214 (1985)……………..7,14,15,19,21,22,23,25,29,30,31,33,34,37

FEDERAL COURTS OF APPEAL CASES

*Cloud v. Trustees of Boston Univ.,*
         720 F.2d 721 (1st Cir. 1983) …..…………………………………………39

*Davis v. Mann,*

882 F.2d 967 (5th Cir. 1989)………………………………………..…25

*Doe v. Harrell,*
841 Fed. Appx. 663 (5th Cir. 2021)…………………………13,22,31,33,37

*Hines v. Rinker,*
667 F.2d.699 (8th Cir.1981)…………………………………………31

*Keko v. Hingle,*
318 F.3d 639 C.A.5 (La.) 2003……………………………………13

*LTV Ed. Sys., Inc. v. Bell,*
862 F.2d 1168 (5th Cir. 1989)………………………………………9

*Wheeler v. Miller,*
168 F.3d 241 (5th Cir. 1999)…………………………………………23


STATE SUPREME COURT CASES

*Coveny v. President & Trs. of the Coll. Of the Holy Cross,*
388 Mass. 16 (1983)………………………………….39

*Schaer v. Brandeis Univ.,*
432 Mass. 474 (2000)…………………………………………………9,39

*Tex. S. Univ. v. Villarreal II,*
620 S.W.3d 899 (Tex. 2021)..……………………………………………20

*UT Med. Sch. at Houston v. Than,*
901 S.W.2d 926 (Tex. 1995)..….……………22, 23, 25, 26, 28


STATE COURTS OF APPEALS CASES

*Alanis v. Univ. of Tex.,*
843 S.W.2d 779 (Tex.App.—Houston [1st Dist.](1992)………….…19,23,25

*Brantley v. Texas Youth Com'n,*
365 S.W.3d 89 (Tex. App.—Austin 2011, no pet.)……………………..20

*Eiland v. Wolf*,
    764 S.W.2d 827 (Tex.App.—Houston [1st Dist.]
    1989, writ denied)……………………………………………..25,29,34,31

*Tobias v. University of Tex.*,
    824 S.W.2d 201 (Tex.App.—Ft. Worth 1991, writ denied)…………….25,34

SECONDARY SOURCES

Selected Legal Issues Relating to Due Process and Liability in Higher
Education by Counsel of Graduate Students…………………………….…..11

<u>B<small>RIEF</small></u>

## I. I<small>NTRODUCTION</small>

Graduate schools such as the Appellee-Defendant University of Texas Southwestern's School of Medicine ("UTSW") and their administrations are responsible for the quality of their medical graduate programs.   "*Such oversight includes ensuring that equitable academic standards are upheld across all disciplines throughout the university. Excellence and equity are inseparable not only in matters of academic standards, but also in the institutional handling of grievances and disputes.*"[3]

This case exposes how a medical student, Appellant-Plaintiff Al Gilani was removed from medical school program at UTSW by a three-headed Ceberus: (1) baseless accusations of plagiarism that placed him on academic probation requiring him to re-take *a different course he had already passed*; (2) an arbitrary grading manipulation that applied only to him to ensure he failed that class on his second time through; and (3) a system that denied him a meaningful opportunity to challenge those false accusations and manipulations.   To add insult to injury, Appellees also unlawfully withheld his transcript and actively interfered with his attempts to enroll in another institution to complete his medial degree.   This

---

[3] Selected Legal Issues Relating to Due Process and Liability in Higher Education by Counsel of Graduate Students, pp. 3.

egregious and unprofessional behavior has left him without a degree, and irreparably damaged his his academic future.

UTSW had a responsibility to ensure that its treatment of Gilani was fair and equitable. And although this Court is and should be hesitant to override a University's right and responsibility to deal with academic issues that arise internally, it must due so when the University's application of those policies go astray of the bedrock principle of due process, as it has here.

## II. JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising under the…laws…of the United States." Appellant-Plaintiff Al Gilani, a United States Citizen, brought suit against Appellee-Defendant UTSW and individual Appellee-Defendants Angela Mihalic, Blake Barker, W.P. Andrew Lee, and Dawn Thiele.

Gilani's suit was based upon US CONST. AMEND. XIV and 42 U.S.C. § § 1983. He alleged the individual defendants, acting under color of law as agents of UTSW - a state actor - conspired with UTSW to wrongfully expel him from

medical school without due process, depriving him of his civil rights.[4] Specifically, Gilani alleges he was subjected to baseless accusations of plagiarism, arbitrary grading manipulation and a system that denied him a meaningful opportunity to challenge these actions. Gilani is entitled to relief sustained as a result of this conspiracy, including attorneys' fees, costs, expenses, and damages that foreseeably flowed from the wrongful termination of any future medical career, as well as injunctive relief in the form of transcript corrections and release.

## III. STATEMENT OF THE ISSUES

1.  Did the trial court err in finding that UTSW's dismissal of Mr. Gilani, premised on alleged academic deficiencies that were the direct result of alleged misconduct by UTSW and its administration, including Dr. Mihalic's alleged fabrication of committee meetings and repeated misrepresentations of his academic record, must be classified as an academic action instead of a disciplinary action, thereby cutting him off from the heightened procedural due process protections required for non academic dismissals?

2.  If the dismissal was of Mr. Gilani was indeed academic and not disciplinary, did the trial court err in determining that under *Doe v. Harrell*,[5] Gilani failed to

---

[4] *Keko v. Hingle*, 318 F.3d 639 C.A.5 (La.) 2003.

[5] 841 F. App'x 663 (5th Cir. 2021).

plausibly allege that the Defendant UTSW's conduct was "beyond the pale of reasonable academic decision making" because it was "such as substantial departure from accepted academic norms as to demonstrate that the [officials] responsible did not actually exercise professional judgement?"[6]

## IV. STATEMENT OF FACTS

Mr. Al Gilani enrolled at the University of Texas Southwestern Medical Center ("UTSW") for medical school in the Fall of 2016.[7] He met the essential eligibility requirements for admission and successfully remediated his first-year courses after an approved leave of absence, demonstrating sufficient performance at the school.[8] His subsequent dismissal by UTSW was not the result of genuine academic shortcomings, but rather a series of actions that plausibly suggest arbitrary and capricious behavior, manipulation, and a substantial departure from accepted academic norms.

### A. A. THE FALSELY ENGINEERED FAILURE IN GLOBAL HEALTH SUMMER RESEARCH ELECTIVE (SUMMER 2018)

In the summer of 2018, Mr. Gilani enrolled in an eight-week Global Health Summer Research Elective in Uganda, a program designed to foster research and

---

[6] *Id.* At 670.

[7] ROA 200 ¶16.

[8] Id.

contribute to published work.[9] Despite his diligent efforts, which included adhering to notification and approval processes for his travel, Mr. Gilani received a failing grade ("F") for the elective. This failing grade was, on information and belief, assigned by Dr. Mihalic and justified by accusations that Mr. Gilani misrepresented his research timeline and travel. However, these accusations allegedly "dramatically misstated nearly all the details" of Mr. Gilani's stay in Uganda, including the documented duration of his travels, the opinions of his supervisors in Uganda, and the involvement of his UTSW supervisors.[10] Mr. Gilani contends this failure was "unjustified, unearned, and not in response to any evidence that he violated any school policy, or academic practicum."[11]

## B. Unjustified Academic Probation and Manipulated GI Block Exam (October − December 2018)

On October 10, 2018, without prior notice or an opportunity to respond, the Student Promotions Committee ("SPC") sent Mr. Gilani a letter informing him that he was being placed on "academic probation" based on the Global Health elective grade. This action imposed an "unwarranted academic probation."[12]

---

[9] ROA 200 ¶17 - 201 ¶20.

[10] ROA 201 ¶21- 202 ¶22.

[11] ROA 209-210 ¶50.

[12] ROA 203 ¶27.

Subsequently, Mr. Gilani was allegedly compelled to retake his GI Block exam, a course he had already passed when judged under the same standards as his classmates. However, UTSW allegedly manipulated his GI Block exam results through "secret hand-scoring and exclusion from a grade curve" to ensure a failing grade, creating an "engineered failure." This manipulated grade directly led to his initial expulsion.[13]

### C. FLAWED APPEALS PROCESS AND EXPULSION (JANUARY – FEBRUARY 2019)

Mr. Gilani's internal appeals against these actions were, as alleged, a "pro forma sham."[14] The SPC, which had initially placed him on probation, acted as its "own appellate forum," in violation of UTSW's "express, written policies."[15] While they reversed his initial expulsion, they maintained the unjustified academic probation and the requirement to retake the GI Block exam.

On January 17, 2019, Dr. Mihalic informed Mr. Gilani of a same-day SPC meeting to expel him, providing demonstrably insufficient notice and no opportunity for him to respond.[16] The final decision to expel Mr. Gilani, issued on February 15, 2019, was predicated on "basic misstatements of Mr. Gilani's

---

[13] ROA 201-203.

[14] ROA 217 ¶82.

[15] ROA 163 ¶49.

[16] ROA 163-164.

record,"[17] including a "word-for-word repetition of the baseless assertion repeatedly made earlier by Dr. Mihalic that UTSW had previously expelled Mr. Gilani during his first year of medical school"—an event that never occurred.[18]

Further demonstrating the lack of "careful consideration," Dean Lee and Dr. Thiele, who conducted the final review, allegedly refused to meet with Mr. Gilani in person, in violation of UTSW's written policies. Their conclusion similarly repeated Dr. Mihalic's inexplicable factual misstatements, reinforcing the characterization of the final appeal as a "pro forma sham."

## D. POST-DISMISSAL OBSTRUCTION AND DEFAMATION (JULY 2019 – PRESENT)

Following his dismissal, Mr. Gilani sought to transfer to another medical school and requested his transcript from UTSW. UTSW has consistently failed to release this transcript, and as of the filing of the First Amended Complaint, had refused to do so for 32 months. Despite Dean Lee conceding UTSW's obligation to release the transcript, Dr. Mihalic admitted in writing that she instructed the registrar to continue to refuse its release. Mr. Gilani contends this refusal is "baseless, a smoke-screen to cover Dr. Mihalic's spiteful refusal."[19]

---

[17] ROA 205-206 ¶36.

[18] Id.

[19] ROA 206 ¶38.

Adding to these alleged obstructions, Dr. Mihalic informed Mr. Gilani on July 12, 2019, that she, alone, would correspond with the UT-Dell Medical School in Austin where he was seeking to enroll. On information and belief, Dr. Mihalic subsequently sent a letter to UT-Dell Medical School "substantially misstating the facts of Mr. Gilani's case and misrepresenting Mr. Gilani's qualifications."[20]

### E.  UNDERLYING DISCRIMINATORY INTENT

Mr. Gilani's complaint plausibly alleges that UTSW's actions, including the serial failure to afford him due process, the disparate substantive treatment of his elective and GI Block exam, his expulsion, and the subsequent efforts to prevent his continued medical education, were taken with discriminatory intent based on his race and ethnicity. Multiple whistleblowers within UTSW's faculty, including Dr. Abdelnaby and Dr. Rasha Babikir, informed Mr. Gilani that he was treated as he was due to his race. These allegations suggest a pattern of behavior inconsistent with objective academic judgment.

## V.  STAEMENT OF THE CASE

This is a civil action arising out of an investigation conducted by the University of Texas Southwestern School of Medicine ("UTSW") into alleged misconduct by Appellant- Plaintiff Al Gilani, a medical student.

---

[20] ROA 207 ¶39.

Plaintiff Al Gilani was a medical student at the University of Texas Southwestern Medical Center ("UTSW") from Fall 2016 to Spring 2019, when he was summarily dismissed from the medical school by the defendants for disciplinary reasons without sufficient due process due him under *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214 (1985) and *Doe v. Harrell*, 841 F. App'x 663 (5th Cir. 2021). He initiated this action by filing a petition in state court on March 25, 2021,[21] which Defendants subsequently removed to federal court, on June 21, 2021.[22] He alleged he was subjected to an "escalating cascade of disciplinary actions, culminating in his expulsion,"[23] and he seeks relief for violations of his constitutional rights under 42 U.S.C. § 1983[24] and Title VI of the Civil Rights Act.[25] Defendants, including UTSW and individual officials (Angela Mihalic, Blake Barker, W.P. Andrew Lee, and Dwain Thiele),[26] countered that Mr. Gilani was dismissed for academic reasons.

---

[21] ROA 26 (Documents Filed in State Court, Dkt. (2-3)

[22] ROA 12 (Defendants' Notice of Removal, Dkt. 1).

[23] ROA 306 (A Status Report, Dkt. 26).

[24] ROA 34 ¶38 (Documents from State Court - Plaintiff's Original Petition, Dkt. 2-3).

[25] ROA 33 ¶32 (Documents from State Court - Plaintiff's Original Petition, Dkt. 2-3).

[26] ROA 26 ¶2 - 28 ¶7 (Documents from State Court - Plaintiff's Original Petition, Dkt. 2-3).

Following Defendants' motion for judgment on the pleadings on June 25, 2021(which was treated as a motion to dismiss),[27] and a response from Mr. Gilani,[28] the District Court (Judge Brantley Starr) initially dismissed Mr. Gilani's claims without prejudice but granted him leave to amend his complaint.[29] Mr. Gilani then filed an amended complaint.[30]

Following this, the Defendants declined to participate in a Scheduling Conference even after the Court issued an order requiring one.[31]   And so, the Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint,[32] and a Motion to Stay Discovery.[33]   Plaintiff filed an Objection to Defendants' Motion to Stay,[34] and a Response to their Motion to Dismiss.[35]The District Court (Chief

---

[27] ROA 71 (Motion for Judgement, Dkt. 6), ROA 73 (Defendants' Brief in Support of Motion for Judgment on the Pleadings, Dkt. 7), and ROA 101 (Appendix to Defendants' Brief in Support of Motion for Judgement on the Pleadings).

[28] ROA 130 (Plaintiff's Response to Motion for Judgement on the Pleadings, Dkt. 10), ROA 135 (Plaintiff's Brief in Support of Response to Motion for Judgement on the Pleadings, Dkt. 10-1), and ROA 152 (Ex. A to Brief in Support of Response to Motion of Judgment on the Pleadings, Dkt. 10-2).

[29] ROA 187 (Memorandum Opinion, Dkt. 14).

[30] ROA 198 (Plaintiff's First Amended Complaint, Dkt. 15).

[31] ROA 257 (Order Requiring Status and Scheduling Conference, Dkt. 21).

[32] ROA 228 (Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, Dkt. 18).

[33] ROA 259 (Defendants' Motion to Stay Discovery, Dkt. 22).

[34] ROA 311 (Plaintiff's Objection/Response to Defendants' Motion to Stay Discovery, Dkt. 27).

[35] ROA 265 (Plaintiff's Response to Defendants' So-Called Motion to Dismiss Plaintiff's First Amended Complaint, Dkt. 26).

District Judge David C. Godbey) issued an order, requesting additional briefing on Gilani's due process rights under *Ewing* and *Harrell.*[36]   Both Mr. Gilani[37] and the Defendants filed supplemental briefs[38] per the District Court's request.

Judge Godbey ultimately concluded that Mr. Gilani's dismissal was "academic," implying a lower standard for procedural due process than a disciplinary dismissal.[39]   While the Court found Mr. Gilani received notice and an opportunity to respond sufficient for an academic dismissal, Mr. Gilani's complaint alleges that his academic deficiencies were "falsely engineered" by UTSW through "secret hand-scoring and exclusion from a grade curve" and that his record was misrepresented.   These allegations challenge the very nature of the dismissal, asserting that it was an arbitrary and capricious action rather than a legitimate academic judgment.   Despite Mr. Gilani's detailed pleadings, the District Court granted Defendants' motion to dismiss Mr. Gilani's substantive due process claim, concluding he had not stated a plausible violation, and further granted qualified immunity to the individual defendants in their personal capacities. Additionally, the court later granted summary judgment against Mr. Gilani on his Title VI claim for

---

[36] ROA 343 (Order Requesting Supplemental Briefing, Dkt. 30).

[37] ROA 345 (Plaintiff's Supplemental Briefing in Support of Plaintiff Gilani's Due Process Rights, Dkt. 31).

[38] ROA 363 (Defendants' Supplemental Brief on Due Process Rights, Dkt. 32).

[39] ROA 382 (Memorandum and Order, Dkt. 33).

failure to establish a prima facie case of discrimination.[40] Mr. Gilani now appeals the judgment dismissing his due process claims, contending (1) first, that the trial court erred in characterizing his dismissal as academic rather than disciplinary, and (2) consequently, in dismissing his substantive due process claim by failing to find that even if it were an academic dismissal, that UTSW's conduct failed to meet the due process standard outlined in *Harrell*.

## VI. SUMMARY OF ARGUMENT

This case turns on two issues: (1) if the the application of *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214 (1985) must always assume that a public university student has a substantive due process right to a continued education; (2) whether Appellant Gilani's petition meets the standard this Court set out in *Doe v. Harrell*,[41] by plausibly alleging that the Defendant UTSW's conduct was "beyond the pale of reasonable academic decision making" because it was "such as substantial departure from accepted academic norms as to demonstrate that the [officials] responsible did not actually exercise professional judgement."[42]

---

[40] ROA 1174, 1188.

[41] 841 F. App'x 663 (5th Cir. 2021).

[42] *Id.* At 670.

Mr. Gilani's allegations that UTSW's actions were "falsely engineered" through "secret hand-scoring" and "misrepresentations" directly challenged the university's adherence to accepted academic norms, and contradict any reasonable expectation of fair, professional judgment in the academic context. These allegations were made both in his First Amended Petition, and in the briefing in response to UTSW's Motion to Dismiss, as well as in the supplemental briefing he filed in response to the District Court's request for such on the subject of due process, preserving the error for appropriate redress by this Court. He argues that the Court erred in finding the dismissal academic rather than disciplinary, and even then, in finding UTSW's behavior in dismissing him for academic reasons meets the due process standard for such dismissals.

## VII. ARGUMENT ONE: PUBLIC UNIVERSITY STUDENTS MAINTAIN SUBSTANTIVE DUE PROCESS RIGHTS TO A CONTINUED EDUCATION UNDER REGENTS OF UNIV. OF MICH. V. EWING

The trial court erred by classifying Mr. Gilani's dismissal from the UTSW Medical School as an academic, rather than a disciplinary, action. This classification denied him the procedural due process protections to which he was entitled. Appellant-Plaintiff Gilani's complaint clearly alleges the his dismissal

stemmed directly from a genuine failure to meet academic standards. This mischaracterization fundamentally undermines his right to a fair process and warrants reversal and remand.

## A. DISCIPLINARY DISMISSALS REQUIRE MORE DUE PROCESS SAFEGUARDS

The Supreme has long distinguished between academic and disciplinary dismissals from public educational institutions, with differing procedural requirements for each.[43]   "Since the issue first arose [...], state and lower federal courts have recognized that there are distinct differences between decisions to suspend or dismiss a student for disciplinary purposes and similar actions taken for academic reasons which may call for hearings in connection with the former but not the latter."[44] Academic dismissals, which typically arise from a "failure to attain a standard of excellence in studies,"[45] and are based on the "academic judgement of school officials" regarding a student's "clinical ability" or "insufficient progress toward that goal."[46]   The evaluations for academic issues are "more subjective and evaluative" than the typical factual questions considered in disciplinary decisions,

---

[43] *Bd. of Curators of Univ. of Mo. v. Horowitz,* 435 U.S. 78, 86-87 (1978).  See also *UT Med. Sch. at Houston v. Than,* 901 S.W.2d 926, 930  (Tex. 1995).

[44] *Id.* At 87.

[45] *Than*, 901 S.W.2d at 930; *Horowitz,* 435 U.S. at 86-87.

[46] *Horowitz*, 435 U.S. at 89-90.

and require "expert evaluation of cumulative information."[47]  Because these rely on the expertise of the professor in fact specific situations, fewer procedural requirements are required for academic dismissals.[48]  Due process concerns for academic dismissals may be satisfied without a hearing.[49]  Instead, an academic dismissal requires only that the student be given meaningful notice and an opportunity to respond, and that the ultimate decision be deliberate and careful.[50] Courts are (rightfully) generally reluctant to review such decisions, showing "great respect for the faculty's professional judgement."[51]

On the other side of the spectrum disciplinary dismissals "arise from acts of misconduct."[52]  Such dismissals involve factual conclusions about a student's behavior,[53] and can result in potential damage to the student's reputation and

---

[47] *Id.* at 90.

[48] *Horowitz*, 435 U.S. at 90; *Alanis v. Univ. of Tex.*, 843 S.W.2d 779, 785 (Tex.App.—Houston [1st Dist.](1992); and *Eiland v. Wolf*, 764 S.W.2d 827, 833 (Tex.App.—Houston [1st Dist.] 1989, writ denied).

[49] *Horowitz*, 435 U.S. at 86.

[50] *Davis v. Mann*, 882 F.2d 967, 975 (5th Cir. 1989).

[51] *Ewing*, 474 U.S. at 225.  See also *Eiland*, 764 S.W.2d at 833; and *Tobias v. University of Tex.*, 824 S.W.2d 201, 209 (Tex.App.—Ft. Worth 1991, writ denied)

[52] *Than*, 901 S.W.2d at 930.

[53] *Horowitz*, 435 U.S. at 89-90.  See also *Goss v. Lopez*, 419 U.S. 565, 580 (1975).

interference with future educational and employment opportunities.[54] Because of this "badge of infamy," these cases may require heightened procedural protections.[55]  Such protections must include at a minimum: oral or written notice of the charges and evidence, and an opportunity for the student to present their side of the story.[56] While a formal hearing with cross-examination or legal representation is generally not required for short suspensions, it may be for expulsions or in specific circumstances.[57]

## B. MR. GILANI'S DISMISSAL WAS DIRECTLY THE RESULT OF MISCONDUCT, NOT AN ACADEMIC EVALUATION

Mr. Gilani's dismissal falls squarely into the category of a disciplinary action due to the nature of the allegations alleged by UTSW and its administration - in particular, Defendant Dr. Mihalic - against him.  His complaint details that his "academic deficiencies" were not genuine but were engineered by specific acts of misconduct on the part of UTSW officials.[58]  These alleged acts include Dr.

---

[54] *Goss*, 419 U.S. at 575; *Than*, 901 S.W.2d at 929-30; *Greenhill v. Bailey*, 519 F.2d 5, 8 (8th Cir. 1975; *Tex. S. Univ. v. Villarreal II*, 620 S.W.3d 899, 905 (Tex. 2021).

[55] *Brantley v. Texas Youth Com'n*, 365 S.W.3d 89, 106 (Tex. App.—Austin 2011, no pet.)

[56] *Goss*, 419 U.S. at 581, *Than*, 901 S.W.2d at 930; ROA 358 (citing ROA 202, ¶23 (Plaintiff's First Amended Complaint, Dkt. 15)).

[57] *Goss*, 419 U.S. at 583-84, 95 S.Ct. at 740-41; Selected Issues, p. 11.

[58] ROA 290 citing ROA at 193-95; 214-15; 216-17; and 218-219 (Plaintiff's First Amended Complaint, Dkt. 15)).

Mihalic's alleged fabrication of committee meetings and repeated misrepresentations of his academic record, and the falsely engineered failure of his GI Block exam through "secret hand-scoring and exclusion from a grade curve;" and false statements about his past academic record.[59]   These are not subjective academic evaluations, but rather assertions of institutional "academic dishonesty" and arbitrary actions that directly impacted his standing, transforming what UTSW characterized as an academic decision into a disciplinary one.

The Texas Supreme Court in *University of Texas Medical School at Houston v. Than* directly supports this argument, unequivocally stating: "Academic dismissals arise from a failure to attain a standard of excellence in studies whereas disciplinary dismissals arise from acts of misconduct. Than's dismissal for academic dishonesty unquestionably is a disciplinary action for misconduct."[60]   While the trial court recognized *Than,* it dismissed its controlling authority for federal due process claims.[61]   However, the specific facts alleged by Mr. Gilani — such as "misrepresentations regarding his research timeline and travel"[62] — assert precisely the type of "academic dishonesty" that *Than* explicitly deemed disciplinary

---

[59]ROA 385 (Memorandum Opinion and Order, Dkt. 33) (citing ROA 202 - 203 ¶24-25. (Plaintiff's First Amended Complaint, Dkt. 15)).

[60] *Than*, 901 S.W.2d at 930.

[61] ROA 383 FN10.

[62] ROA 29.

misconduct.[63] This precedent, though state law, is highly instructive and persuasively demonstrates that the underlying accusations against Mr. Gilani constitute misconduct, demanding a disciplinary classification.

Given the inherently disciplinary nature of the alleged misconduct by UTSW, Mr. Gilani was due the heightened procedural protections associated with disciplinary dismissals. Instead, he was denied fundamental due process rights, including a lack of notice of the proceedings, denial of access to evidence, inability to cross-examine his accusers, absence of a neutral arbiter, and denial of the right of appeal to a separate decision-maker. These alleged procedural deprivations directly contradict the requirements for disciplinary actions outlined in cases like *Goss*.[64] The stigma of dismissal for alleged "academic dishonesty" engineered by the institution's own misconduct further underscores the need for these robust protections.[65]

Mr. Gilani's complaint sufficiently "pled the contrary" to an academic dismissal, demonstrating that his alleged academic failures were a direct result of arbitrary and capricious actions by UTSW officials, not genuine academic struggles

---

[63] *Than*, 901 S.W.2d. at 930-31.

[64] *Goss*, 419 U.S. at 581.

[65] *Goss*, 419 U.S. at 575; and *Than*, 901 S.W.2d at 929-30.

akin to those in *Ewing*.[66] Under the *Iqbal* plausibility standard, his detailed factual allegations, accepted as true for a motion to dismiss, allow the court to draw a reasonable inference that UTSW is liable for the alleged misconduct, thereby classifying his dismissal as disciplinary. Therefore, the trial court's erroneous classification, which led to a denial of essential due process, should be reversed, and the case remanded for proceedings consistent with a disciplinary action.

## VIII. EVEN IF GILANI'S DISMISSAL WAS ACADEMIC, THE COURT ERRED IN FAILING TO FIND UTSW'S ACTIONS CONSTITUTED A SUBSTANTIAL DEPARTURE FROM ACCEPTED ACADEMIC NORMS

Even if this Court disagrees with Gilani, and sustains the District Court's findings that the dismissal was academic rather than disciplinary one,[67] It is imperative whether the Court review whether, even under the more deferential standard applied to academic judgements, UTSW's conduct was "clearly arbitrary or capricious,"[68] or otherwise "'beyond the pale of reasonable academic decision-making' and "such a substantial departure from accepted academic norms as to

---

[66] *Ewing*, 474 U.S. at 218-19; 223. (See also ROA 358 FN38 (citing *Alanis*, 843 S.W.2d at 7; and *Eiland*, 764 S.W.2d at 834).

[67] ROA 382 (Dkt. 33 - Memorandum Opinion and Order).

[68] *Harwell*, 841 F. App'x 663, 670 (5th Cir. 2021). See also ROA 385 (Dkt. 33 - Memorandum Opinion and Order).

demonstrate that the [officials] responsible did not actually exercise professional judgment.'"[69] Mr. Gilani maintains he pled sufficient facts in his Amended Petition[70] to sustain a cause of action for a violation of his procedural and substantive due process rights under the *Twombly* standard.

## A. JUDICIAL DEFERENCE TO ACADEMIC DECISIONS REQUIRES AN EXERCISE OF PROFESSIONAL JUDGEMENT TO SATISFY DUE PROCESS

Since the decision in *Ewing*, courts generally afford great deference to decisions concerning academic performance and dismissal from educational institutions, recognizing that universities are better positioned than courts to evaluate a student's judgement, self-discipline, and prospects for success in a chosen profession.[71] Substantive due process protects individuals from certain government actions regardless of the fairness of the procedures used, prohibiting conduct that "shocks the conscience" or is "clearly arbitrary or capricious."[72] When reviewing a decision to dismiss a student based on academics, "[h]istorically, the courts have refused to review a school's decision to dismiss a student except under limited circumstances, such as allegations and proof that the school officials acted

---

[69] ROA 385 (Dkt. 33 - Memorandum Opinion and Order) (citing *Harwell*, 841 F. App'x at 670).

[70] Beginning on ROA 198 (Dkt. 15 - Plaintiff's First Amended Petition).

[71] See e.g. *Alanis v. University of Texas Health Science Center*, 436 843 S.W.2s 779, 788-89; and *Chan v. Board of Regents of Texas Southern University*, 2012 WL 5832494 at *5 (S.D. Texas, not reported).

[72] *Moulton v. City of Beaumont*, 991 F.2d 227, 250 (5th Cir. 1993).

arbitrarily and capriciously, or otherwise abused the authority vested in them."[73] In academic settings, a dismissal amounts to a substantive due process violation if it is "such a substantial departure from accepted academic norms as to demonstrate that the [officials] responsible did not actually exercise professional judgment."[74]

Federal Rule of Civil Procedure 82(a)(2) only requires that Gilani's complaint contain "short and plain statement of the claim showing that the pleader is entitled to relief."[75] And while "detailed factual allegations" are not required, the Rule does require Gilani's petition to have "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[76] The *Iqbal* court clarified that there are two principles which underlie the application of the *Twombly* standard: (1) that a court must only accept as true allegations that are more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements[,]" and (2) "determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its expertise and common sense."[77] In this

---

[73] *Eiland*, 764 S.W.2d at 833, 835 (citing *Foley v. Benedict*, 122 Tex. 193, (Tex.Comm'n App.1932, opinion adopted); and *Rinker*, 667 F.2d. 699, Gaspar, 513 F.2d 843.)

[74] *Doe v. Harrell*, 841 Fed. Appx. 663, 670-71 (5th Cir. 2021)(citing *Ewing*, 474 U.S. at 225; and *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 748 (5th Cir. 2019).   See also *Wheeler v. Miller*, 168 F.3d 241, 250 (5th Cir. 1999)

[75] FED. R. CIV. P. 82(a)(2).

[76] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 555, 570).

[77] *Iqbal*, 556 U.S. at 663-64.

context, Gilani accepts that he must argue "that the conduct he complains of interferes with rights so fundamental that they are implicit in the concept of ordered liberty…." to meet his pleading burden.[78]

## B. UTSW'S DISMISSAL OF GILANI WAS ARBITRARY AND CAPRICIOUS AND FAILED TO SATISFY DUE PROCESS   - GILANI'S COMPLAINT DETAILS BEHAVIOR WHICH IS BEYOND THE PALE AND DEVIATES FROM THE REASONABLE EXERCISE OF ACADEMIC DECISION MAKING

Unlike typical cases of this nature where academic dismissals are upheld based on a record of genuine scholastic inadequacy, Mr. Gilani's allegations go beyond mere disagreement with a subjective academic judgement; he asserts that his supposed academic deficiencies were "falsely engineered" through deliberate ill-intentioned malfeasance on the part of UTSW and its administration in two key ways: (1) fabricated and manipulated grades to engineer failure; and (2) a compromised and bad-faith appeal process.

### 1. UTSW FABRICATED AND MANIPULATED GILANI'S GRADES TO ARTIFICIALLY ENGINEER HIS FAILURE

Mr. Gilani has indeed pled sufficient facts to demonstrate that Defendants violated his substantive due process rights, asserting that his dismissal was not a legitimate academic judgment but rather an arbitrary and capricious action.[79]  For instance, he alleges that his initial "academic warning" regarding his Global Health Summer Research Elective was "unjustified, unearned, and not in response to any

---

[78] *Phelan v. Norville*, 460 F. App'x 376, 381 n. 6 (5th Cir. 2012).

[79] ROA 290.

evidence that he violated any school policy, or academic practicum but was instead falsely engineered."[80]  Similarly, he contends that his failure of the GI Block exam was "falsely engineered" by UTSW through "secret hand-scoring and exclusion from a grade curve" to ensure a failing grade, forcing him to retake a class he had already passed under standard grading criteria.[81]  These are not allegations of simple academic struggle or disagreement with a professor's subjective grading, but rather claims of intentional manipulation and arbitrary exclusion from a benefit (the curve) that was applied to other students.[82] Such alleged actions, if proven, are a direct challenge to the exercise of "professional judgment"[83] and suggest a fundamental lack of rational basis for the dismissal.[84]

Furthermore, Mr. Gilani distinguishes his case from scenarios where courts defer to academic decisions, such as in Board of Curators of University of *Missouri v. Horowitz,* or *Regents of University of Michigan v. Ewing.*[85]  In *Ewing*, the student was

---

[80] ROA 358 (citing ROA 202, ¶23 (Plaintiff's First Amended Complaint, Dkt. 15)).

[81] ROA 385 (Memorandum Opinion and Order, Dkt. 33) (citing ROA 202 - 203 ¶24-25. (Plaintiff's First Amended Complaint, Dkt. 15)).

[82] ROA 202 - 203 ¶24-25.

[83] See e.g. *Than,* 901 S.W.2d 926 (Tex. 1995).

[84] *Harrell,* 841 Fed.Appx. at 670.  Contrast with *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

[85] *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214 (1985).

legitimately struggling academically.[86]   Here, Mr. Gilani explicitly asserts that he "was not actually struggling."[87] and that his alleged academic deficiencies were **"engineered by specific acts of misconduct"** on the part of UTSW officials.[88] These meticulously pled allegations of active, intentional manipulation are more than merely conclusory, and directly contradict the notion that the school was exercising objective academic judgment or providing a fair assessment of his "cumulative information,"[89] and are evidence that, taken as true meet the "substantial departure" standard.

Such conduct is "beyond the pale of reasonable academic decision-making" and "so untethered from accepted academic norms as to be unconstitutional."[90]

## 2. <u>UTSW Offered Gilani Only a Compromised and Bad-Faith Appeal Process</u>

Mr. Gilani has pled throughout his filings in the District Court that he "had a right under clearly established federal law to due process."[91]   Gilani makes clear

---

[86] *Ewing*, 474 U.S. at 218-19; 223. (See also ROA 358 FN38 (citing *Alanis*, 843 S.W.2d at 7; and *Eiland*, 764 S.W.2d at 834).

[87] ROA 357 (Supplemental Brief in Support of Plaintiff Gilani's Due Process Rights, Dkt. 31) (contrasting himself with the Plaintiff in *Ewing* in FN 36 (citing 474 U.S. at 225)).

[88] ROA 357 ¶2 - 358. See also ROA 201 - 203 ¶23-25.

[89] *See Tobias v. University of Texas at Arlington*, 824 S.W.2d 201, 207-208 (2017).

[90] ROA 360.

[91] ROA 213 ¶67 (Plaintiff's First Amended Complaint, Dkt. 15).

that consistent with even the low bar for academic dismissals, he is asserting his right under "the policies of UTSW and/or federal law, he had the right to hear the evidence against him, to respond to that evidence before being expelled, and to a fair and legitimate disciplinary process in all hearings."[92]  Instead of receiving these most basic rights, he alleges that he was "denied the process he was due…through an illegitimate set of disciplinary procedures."[93]

Mr. Gilani alleges that the internal appeals, far from being the "careful and deliberate" consideration expected of academic institutions,[94] were a "pro forma sham."[95] He specifically states that the Student Promotion Committee (SPC) repeatedly acted as its "own appellate forum,"in violation of UTSW's "express, written policies."[96]

Furthermore, the final review by Dean Lee and Dr. Thiele allegedly repeated Dr. Mihalic's "inexplicable misstatement of basic facts" about Mr. Gilani's

---

[92] Id.

[93] ROA 161 ¶42 (Plaintiff's Response to Motion for Judgement on the Pleadings, Dkt. 10-2) 213 ¶68 (Plaintiff's First Amended Complaint, Dkt. 15).

[94] *Horowitz*, 435 U.S. at 85.

[95] ROA 216-17 ¶82 (Plaintiff's First Amended Complaint, Dkt. 15).

[96] ROA 36 ¶48, 38 ¶49 (Documents from State Court - Plaintiff's Original Petition in State Court, Dkt. 2-3), 163 ¶49, 164 ¶54 (Plaintiff's Response to Motion for Judgement on the Pleadings, Dkt. 10-2), 215 ¶75, 216 ¶80 (Plaintiff's First Amended Petition, Dkt. 15).

record[97]—such as the false assertion that he had been previously expelled during his first year—demonstrating a lack of genuine deliberation.[98]. The refusal of Dean Lee and Dr. Thiele to meet in person with Mr. Gilani, in alleged violation of UTSW's written policies, further highlights a lack of fairness in the review process.[99]  These actions, if true, indicate that the process was not a "good-faith, minimally fair conclusion of a neutral arbiter" [DKT 15, 111, 527, 540, 547], moving beyond mere procedural deficiencies to substantive arbitrariness.

### C. GILANI HAS PRESERVED ERROR AND MAINTAINED HIS RIGHT TO MAKE JUST THIS ARGUMENT IN FRONT OF THIS COURT

Despite the high bar for judicial intervention in academic matters, Mr. Gilani's First Amended Complaint sets for detailed factual allegations that, when taken as true at the motion to dismiss stage establish a plausible claim that UTSW's actions purportedly transcended subjective academic evaluations and instead constituted arbitrary and capricious conduct.[100]  Moreover, this is an argument he

---

[97] ROA 164 ¶56 (Plaintiff's Response to Motion for Judgement on the Pleadings, Dkt. 10-2), 216 ¶82 ( (Plaintiff's First Amended Petition, Dkt. 15).

[98] ROA 216 ¶82 ( (Plaintiff's First Amended Petition, Dkt. 15)("Dr. Mihalic repeatedly insisted that Mr. Gilani had been expelled from UTSW during his first year as a medical student, an allegation the final letter repeats word-for-word, despite the fact that no such prior expulsion ever occurred[.]")

[99] 216 ¶82 (Plaintiff's First Amended Petition, Dkt. 15).

[100] ROA 217, ¶89 (Plaintiff's First Amended Complaint, Dkt. 15).  See also ROA 290 (citing ROA at 193-95; 214-15; 216-17; and 218-219 (Plaintiff's First Amended Complaint, Dkt. 15)).

makes in his First Amended Petition;[101] his Brief in Response to UTSW's Motion to Dismiss.[102] as well as his Brief in Response to the District Court's Request for Supplemental Briefing,[103] Following this briefing, but before ruling, the District Court issued an order requesting additional supplemental briefing from the parties on Gilani's substantive due process rights to a continued education.  Notably, the second issue the District Court asked the parties to brief was "[w]hether Plaintiff has alleged sufficient facts to show Defendants violated his substantive due process right," referencing *Harrell.[104]*  In his supplemental brief in response to the District Court's request Gilani argued "[u]nder the standard the 5th Circuit set forth in *Harrell*, this Court should find fault with the Defendants' decision to expel Mr. Gilani if 'it is such a substantial departure from accepted academic norms as to demonstrate that the person or the committee responsible did not actually exercise professional judgement.'"[105]  That all of these places in the record show Gilani to have meticulously detailed the factual allegations he now rests his argument upon

---

[101] Begins on ROA 198 (Plaintiff's First Amended Complaint, Dkt. 15).

[102] Begins on ROA 265 (Plaintiff's Response to Defendants' So-Called Motion to Dismiss, Dkt. 26).

[103] Begins on ROA 345 (Supplemental Brief in Support of Plaintiff Gilani's Due Process Rights, Dkt. 31).

[104] ROA 343 (Order Requesting Supplemental Briefing, Dkt. 30).

[105] ROA 357 (Supplemental Brief in Support of Plaintiff Gilani's Due Process Rights, Dkt. 31) (citing *Ewing*, 474 U.S. at 225).

make it clear that he preserved error and may rely on those same factual allegations now.

He claims that UTSW fabricated committee meetings and misrepresented his academic record, including falsely stating he had been previously expelled.[106] These are not mere "subjective professional judgments" but **assertions of "academic dishonesty" by the institution itself**, transforming the nature of the dismissal from academic to disciplinary, which requires heightened due process.[107]

At the motion to dismiss stage, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor.[108] While legal conclusions are not assumed true, they provide the framework, and must be supported by factual allegations. Mr. Gilani's complaint is replete with specific factual contentions, such as allegations about Dr. Mihalic's "alleged fabrication of committee meetings and repeated misrepresentations of his academic record" and the "falsely engineered" GI Block exam failure.[109] These are

---

[106] ROA 359 (citing ROA 203 ¶27; 215 ¶77 (Plaintiff's First Amended Complaint, Dkt. 15); and ROA 294-296 (Plaintiff's Response to Motion to Dismiss Dkt. 23)).

[107] *Than*, 901 S.W.2d at 930.

[108] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 544).

[109] ROA 385.

not "conclusory allegations or unwarranted factual inferences" but detailed claims of specific misconduct that "allow[s] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[110]

In *John Doe v. Brandeis Univerisity* out of the United States District Court for the District of Massachusetts reinforces the idea that every circuit affirms the "well established" principle that the student-college relationship is contractual in nature, governed by a standard of "reasonable expectation - what meaning the party making the manifestation, the university, should reasonably expect the other party to give it."[111] While Mr. Gilani's primary claims are constitutional and not brought in contract, this contractual understanding across circuits underpins the meaning of "accepted academic norms" that courts refer to when evaluating substantive due process claims.[112]

Defendants contend that Mr. Gilani's substantive due process claim is merely a "conclusory statement" and that no liberty or property interest in continued medical education exists for academic dismissals.[113]    However, Mr. Gilani's

---

[110] *Twombly*, 550 U.S. at 555

[111] *Id.* at *48, (citing *Schaer v. Brandeis Univ.*, 432 Mass. 474, 478 (2000) (quoting *Cloud v. Trustees of Boston Univ.*, 720 F.2d 721, 724 (1st Cir. 1983)(citing *Coveny v. President & Trs. of the Coll. Of the Holy Cross*, 388 Mass. 16, 20 (1983).

[112] See eg *Harrell*, 841 F.App'x 663, 670 (5th Cir. 2021).

[113] ROA 385.

allegations provide considerable factual detail that goes beyond a "naked assertion" and "labels and conclusions."[114] His argument is not that he simply failed academically, but that his failures were **the result of UTSW's arbitrary and dishonest actions**. This changes the character of the dismissal. While some justices express skepticism about the scope of substantive due process, current precedent in the Fifth Circuit, notably *Doe v. Harrell*, explicitly provides a pathway for challenging academic dismissals under this doctrine when they are "clearly arbitrary or capricious" and demonstrate a lack of "professional judgment." Thus, Gilani's detailed pleadings, accepted as true at this stage, plausibly allege actions by UTSW that fall outside the bounds of protected academic judgment, thereby violating his substantive due process rights.

## IX. CONCLUSION & PLEA FOR RELIEF

The trial court committed clear and reversible error by mischaracterizing Mr. Gilani's dismissal as an academic rather than a disciplinary action, thereby denying him the fundamental procedural due process protections guaranteed by

---

[114] *Twombly*, 550 U.S. 555.

the Fourteenth Amendment.[115] Gilani's complaint unequivocally alleges that his "academic deficiencies" were fabricated and engineered by specific acts of misconduct on the part of UTSW officials, including false statements and manipulated exam results, which fall squarely within the realm of disciplinary misconduct. Furthermore, Mr. Gilani has plausibly pled facts sufficient to demonstrate that UTSW's actions were arbitrary and capricious, constituting a "substantial departure from accepted academic norms" that violated his substantive due process rights. These detailed factual allegations, which must be accepted as true at the motion to dismiss stage, establish a plausible claim that UTSW's conduct was "beyond the pale of reasonable academic decision-making."[116]

For these reasons, the trial court's judgment must be reversed. The case should be remanded for further proceedings to ensure Mr. Gilani receives the procedural due process he was due as a result of a disciplinary action, including proper notice, access to evidence, and an opportunity to be heard before a neutral arbiter. Such a remand will allow his substantive due process claims to proceed, enabling a full determination on the merits of whether UTSW's alleged arbitrary and capricious actions violated his constitutional rights.[117]

---

[115] *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 86-87; *Than*, 901 S.W.2d at 930 (Tex. 1995).

[116] See *Iqbal*, 556 U.S. 662, 678-79.

[117] *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)].

RESPECTFULLY SUBMITTED, JULY 11, 2025, by

/s/Elizabeth D. Alvarez
Elizabeth D. Alvarez
Texas Bar No. 24071942
alvarez@guestandgray.com

Scott Gray
Texas Bar No. 24043701
scott@guestandgray.com

Amy Miller
Texas Bar No. 24085475
amy@guestandgray.com

GUEST & GRAY, PC
315 S. Bois D'Arc St.
Forney, Texas 75126
Tel. (972) 564-4644
Fax. (866) 209-9785

COUNSEL FOR APPELLANT AL GILANI

## CERTIFICATE OF SERVICE

I, Elizabeth D. Alvarez, certify that on Monday, July 11, 2025, the foregoing was served on the Defendants through their registered counsel of record in accordance with FED. R. APP. P. 25(B)-(C), and was transmitted to the Clerk of the Court.

/s/Elizabeth D. Alvarez

Elizabeth D. Alvarez

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32 & 5TH CIR. R. 32.2

I, Elizabeth D. Alvarez, certify that this Brief in Support complies with the type-volume limitation of FED. R. APP. P. 32(A)(7)(B) because this brief contains 3,207 number of words, excluding those parts which are exempted by FED. R. APP. P. 32(F).

I also certify that this Brief in Support complies with the typeface requirements laid out in FED. R. APP. P. 32(A)(5), and the typing requirements of FED. R. APP. P. 32(A)(5) because it was prepared using Pages (the Apple equivalent of Microsoft Worda) in a proportionally spaced Sans Serif Font (Baskerville) in a size of at least 14 pts, and the footnotes are in the same font at a size of at least 12 pts.

/s/ Elizabeth D. Alvarez

Elizabeth D. Alvarez