**Cause No. 25-10451**
_____

In the United States Court of Appeals
for the Fifth Circuit
_____

AL GILANI,
*Plaintiff-Appellant*

v.

UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER; ANGELA
MIHALIC, MEDICAL DOCTOR; BLAKE BARKER, MEDICAL DOCTOR; W.P.
ANDREW LEE, MEDICAL DOCTOR; DWAIN THIELE, MEDICAL DOCTOR.
*Defendants-Appellees.*
_____

On Appeal from the United States District Court for the Northern District of
Texas, Dallas Division, Cause No. 3:21-cv-01461-N
_____

BRIEF OF APPELLEES
_____

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy Attorney General for Civil
Litigation

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

KIMBERLY GDULA
Chief, General Litigation Division

/s/ Brianna Krominga
**Brianna Krominga**
*Lead Attorney*
Texas Bar No. 24103252
**Ali Thorburn**
Texas Bar No. 24125064
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(737) 330-4404
FAX: (512) 320-0667
Brianna.Krominga@oag.texas.gov
Ali.Thorburn@oag.texas.gov
**ATTORNEYS FOR APPELLEES**

# CERTIFICATE OF INTERESTED PERSONS

## No. 25-10451

AL GILANI,
*Plaintiff-Appellant,*

v.

UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER; ANGELA MIHALIC, MEDICAL DOCTOR; BLAKE BARKER, MEDICAL DOCTOR; W.P. ANDREW LEE, MEDICAL DOCTOR; DWAIN THIELE, MEDICAL DOCTOR.

*Defendants-Appellees.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, defendants-appellees, as governmental parties, need not furnish a certificate of interested persons.

s/ *Brianna M. Krominga*
**BRIANNA M. KROMINGA**
Assistant Attorney General

## STATEMENT REGARDING ORAL ARGUMENT

This appeal does not warrant oral argument. Plaintiff Al Gilani appeals the dismissal of a sole cause of action— Fourteenth Amendment procedural due process violations brought through 42 U.S.C. § 1983 against defendants Angela Mihalic, M.D., Blake Barker, M.D., W.P. Andrew Lee, M.D., and Dwain Thiele, M.D. (collectively, the "Individual Defendants"). The district court correctly dismissed all of Gilani's claims based upon black-letter law, including this claim. Given the straightforward nature of the issues on appeal, oral argument would not significantly aid the Court in its review of the judgment below. Nonetheless, should the Court determine that oral argument would be helpful, Appellees respectfully request the opportunity to participate.

# TABLE OF CONTENTS

Certificate of Interested Persons .................................................. 2

Statement Regarding Oral Argument .............................................. 3

Table of Contents ....................................................................... 4

Index of Authorities ................................................................... 6

Introduction .............................................................................. 9

Jurisdictional Statement ............................................................ 10

Statement of the Issues (Restated) .............................................. 11

Statement of the Case ............................................................... 11

Summary of the Argument .......................................................... 17

Standard of Review ................................................................... 17

Argument .................................................................................. 19

   I.     Gilani waived appellate review of several issues. .................... 19

       A.    Gilani fails to raise an appealable issue against UT Southwestern, thus UT Southwestern is not a proper party to this appeal. ........................................................ 19

       B.    Gilani waived appellate review of the district court's determination that the Individual Defendants are entitled to qualified immunity, thereby waiving any challenge to the dismissal of claims against them in their personal capacities. ............................................................. 20

       C.    Appellate review of Gilani's Title VI and defamation claims are deemed waived. ............................................. 23

   II.    The district court correctly determined that Gilani's dismissal from UT Southwestern was academic, rather than disciplinary, and correctly found Gilani failed to state a claim that UT Southwestern violated Gilani's procedural due process rights for an academic dismissal. ............................... 24

       A.    Gilani's dismissal from UT Southwestern was academic, not disciplinary. ................................................... 28

       B.    The pleadings show Gilani received more than sufficient

process for an academic dismissal. .....................................................33

C.    UT Southwestern's dismissal of Gilani's was careful and
deliberate and not a substantial departure from academic
norms. ...............................................................................................36

III.    The district court correctly found Gilani failed to state a
substantive due process claim. .............................................................39

A.    There is no substantive due process right to continued
higher education at a public university. ...............................39

B.    Even if there was a substantive due process right to higher
education, the district court properly found Gilani failed to
state a substantive due process claim because the pleadings
show Gilani's dismissal from UT Southwestern was not
clearly arbitrary or capricious. ............................................. 40

Conclusion ..............................................................................................................45

Certificate of Service ............................................................................................47

Certificate of Compliance ....................................................................................48

## INDEX OF AUTHORITIES

**Cases**

*Aragona v. Berry,*
   No. 3:10-CV-1610-G, 2012 WL 467069 (N.D. Tex. Feb. 14,
   2012).............................................................................................. 29, 30

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................................... 18

*Bd. of Curators of Univ. of Mo. v. Horowitz,*
   435 U.S. 78 (1978) .............................................................. passim

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................. 17, 18

*Butler v. E I DuPont de Nemours & Co.,*
   No. 22-30069, 2022 WL 5059893 (5th Cir. 2022) ...................... 21

*Causey v. Sewell Cadillac-Chevrolet, Inc.,*
   394 F.3d 285 (5th Cir. 2004) ...................................................... 27

*Collins v. Morgan Stanley Dean Witter,*
   224 F.3d 496 (5th Cir. 2000) .................................................. 18, 44

*County of Sacramento v. Lewis,*
   523 U.S. 833 (1998) .................................................................. 40

*Davis v. Mann,*
   882 F.2d 967 (5th Cir.1989) ........................................... 25, 33, 44

*Dejoria v. Maghreb Petroleum Expl., S.A.,*
   804 F.3d 373 (5th Cir. 2015) .................................................. 21, 23

*Doe v. Harwell,*
   841 F. App'x 663 (5th Cir. 2021)........................................ 39, 40, 42

*Dorsey v. Portfolio Equities, Inc.,*
   540 F.3d 333 (5th Cir. 2018) .................................................. 18, 19

*Dung Quoc Pham v. Blaylock,*
   712 F. App'x 360 (5th Cir. 2017) .............................................. 41

*Fernandez-Montes v. Allied Pilots Ass'n,*
   987 F.2d 278 (5th Cir. 1993)...................................................... 18

*Funk v. Stryker Corp.*,
    631 F.3d 777 (5th Cir. 2011) ...................................................... 27

*Gentilello v. Rege*,
    627 F.3d 540 (5th Cir. 2010) ...................................................... 18

*Inclusive Cmtys. Project., Inc. v. Lincoln Prop. Co.*,
    920 F.3d 890 (5th Cir. 2019) ...................................................... 27

*Johnson v. Zerbst*,
    304 U.S. 458 (1938) .................................................................. 19

*JTB Tools & Oilfield Servs., LLC v. United States*,
    831 F.3d 597 (5th Cir. 2016) ...................................................... 22

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ...................................................... 18

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) .................................................................. 25

*P&G v. Amway Corp.*,
    376 F.3d 496 (5th Cir. 2004) ...................................................... 22

*Patel v. Tex. Tech. Univ.*,
    941 F.3d 743 (5th Cir. 2019) ...................................................... 40

*Phelan v. Norville*,
    460 F. App'x 376 (5th Cir. 2012) ................................................ 41

*Pickett v. Tex. Tech Univ. Health Scis. Ctr.*,
    37 F.4th 1013 (5th Cir. 2022) ..................................................... 25

*Plummer v. Univ. of Houston*,
    860 F.3d 767 (5th Cir. 2017) ...................................................... 25

*Regents v. Univ. of Mich. v. Ewing*,
    474 U.S. 214 (1985) ............................................................ passim

*Rochin v. California*,
    342 U.S. 165 (1952) .................................................................. 41

*Shaboon v. Duncan*,
    252 F.3d 722 (5th Cir. 2001) ........................................... 25, 32, 36

*Shah v. Univ. of Texas Sw. Med. Sch.*,
    129 F. Supp. 3d 480 (N.D. Tex. 2015) ........................ 29, 30, 33, 39

*Sugg v. Midwestern Univ.*,
  105 F.4th 345 (5th Cir. 2024) ...............................................................passim

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...................................................................................27

*Tuchman v. DSC Commc'ns Corp.*,
  14 F.3d 1061 (5th Cir.1994) .......................................................................19

*United States v. Dunkel*,
  927 F.2d 955 (7th Cir. 1991) .....................................................................22

*United States v. Olano*,
  507 U.S. 725 (1993) ...................................................................................19

*United States v. Torres-Aguilar*,
  352 F.3d 934 (5th Cir. 2003) .....................................................................22

*United States v. Whitfield*,
  590 F.3d 325 (5th Cir. 2009) ................................................................ 21, 23

*Univ. of Tex. Med. Sch. at Houston v. Than*,
  901 S.W.2d 926 (Tex. 1995) .......................................................................32

*Will v. Michigan Dep't of State Police*,
  491 U.S. 58 (1989) .....................................................................................23

*Wilson v. Hous. Cmty. Coll. Sys.*,
  955 F.3d 490 (5th Cir. 2020) .....................................................................19

**Rules**

Fed. R. Civ. P. 12(b)(6) .........................................................................17

## INTRODUCTION

This case presents a straightforward question: whether a professional school must forfeit its academic judgment when a student, having been given every conceivable opportunity to succeed, failed to meet the standards of his chosen field. The answer is well settled: it does not.

From the outset of his enrollment as a medical student at the University of Texas Southwestern Medical Center ("UT Southwestern"), Al-Karim Gilani's ("Gilani") academic record reflected persistent deficiencies. He failed foundational courses, repeated examinations without improvement, and was offered multiple rounds of academic remediation spanning numerous years. Time and again, the UT Southwestern academic review board, the Student Promotions Committee ("SPC"), extended leniency—placing him on probation instead of dismissal, allowing course and exam retakes, and allowing further review opportunities rather than immediate academic dismissal. At each juncture, the institution afforded Gilani more chances to improve his academic performance.

Ultimately, however, professional dreams cannot substitute for professional competence. Medicine demands mastery, and as Gilani acknowledges, it is UT Southwestern that is charged with cultivating that mastery. App. Br. 11. ("Graduate schools such as the Appellee-Defendant University of Texas Southwestern's School

of Medicine ("UTSW") and their administrations are responsible for the quality of their medical graduate programs."). When Gilani's failures continued unabated, despite years of remedial measures, UT Southwestern exercised its academic discretion to dismiss him. Rather than confront his own performance, Gilani brings this suit in an effort to recast his dismissal as the product of malicious faculty intent. That claim collapses on the face of his pleading.

It is not the role of the tribunal to second-guess the scholastic judgments of experienced educators, nor to confer upon an unqualified student the professional credential he desires. The governing jurisprudence dictates that academic institutions are not required to suspend their standards indefinitely, and courts should be reluctant to disturb those standards. Thus, the district court correctly dismissed Gilani's lawsuit in its entirety.

Gilani now appeals the dismissal of his section 1983 due process claim against the Individual Defendants in their official capacities.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Gilani's claims under 28 U.S.C. §§ 1331 and 1367(a).

On February 24, 2025, the court entered a final judgment disposing of the case. ROA.1174-88.

Gilani timely filed this appeal on March 26, 2025. ROA.1189. This Court has jurisdiction over the appeal based upon 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES (RESTATED)

1. Whether the district court correctly concluded that because UT Southwestern's dismissal of Gilani was an academic decision and that UT Southwestern provided the procedural due process necessary for an academic decision when it dismissed Gilani?

2. Whether the district court correctly concluded that UT Southwestern's dismissal of Gilani was not arbitrary and capricious?

## STATEMENT OF THE CASE

### I.    Gilani Was Dismissed from UT Southwestern After He Repeatedly Failed to Meet the University's Minimum Academic Threshold.

In the fall of 2016, Gilani matriculated at UT Southwestern as a medical student. ROA.200 at ¶16. During that semester, he failed *five* courses. *Id.* The SPC subsequently placed him on academic probation. *Id.* This determination, like all other academic decisions relevant to this case, constituted an academic judgment rendered by the SPC in accordance with institutional policy EDU-402 Academic Decisions – UT Southwestern Medical School. ROA.116-20. Gilani elected to take a leave of absence for the remainder of the 2016-2017 academic year, after which he repeated his first semester of medical school in Fall 2017 and ultimately passed the previously failed courses. *Id.;* ROA.111-2.

In the summer of 2018, Gilani enrolled in an eight-week summer research

elective in Uganda through UT Southwestern's Office of Global Health. ROA.25-10451.200 at ¶17. He ultimately received a failing grade based on multiple deficiencies in his performance, including: remaining in Uganda for only two of the eight weeks, spending the remainder of the period traveling to other countries unrelated to the program; failing to obtain the requisite approvals for his travels and activities; not engaging in the research necessary to complete his proposed project; and misrepresenting critical aspects of his participation to UT Southwestern officials, including his research timeline, travel itinerary, and activities while abroad. ROA.101, 201 at ¶21.

Following the Summer Elective course failure, the SPC undertook a comprehensive review of Gilani's academic record. ROA.202 at ¶23. The SPC concluded that his performance failed to meet the academic standards expected of students in a medical training program. *Id.* As a result, the SPC placed Gilani on academic warning for the remainder of his time in medical school. *Id.* He was formally notified of the decision and informed of his right to appeal, should he wish to do so. He declined. ROA.101-2.

The very next semester (Fall 2018)—while still on academic probation—Gilani failed the gastrointestinal systems course ("GI course"). ROA.202 at ¶24. In light of his continued underperformance, the SPC conducted another thorough

assessment of Gilani's entire academic history. ROA.123-24. Upon careful review of the totality of his record, the SPC dismissed him from the medical school for academic reasons. *Id.* Gilani exercised his right to appeal the dismissal, and following the appellate process, he was conditionally reinstated. ROA.104-6. As a condition of the reinstatement, he was required to remediate the failed GI course, fulfill certain reporting obligations, and remain on academic probation for the remainder of his enrollment. *Id.;* ROA.123-24. Gilani was warned: should his academic deficiencies continue, such deficiencies carried with them the threat of academic dismissal. ROA.104-5. Gilani was again informed of the appeal process—and again, he chose not to do so. ROA.104-6.

Gilani then failed his GI course remediation. The SPC dismissed Gilani from medical school for a second time, based on another careful review of his entire academic performance, and provided him with information on the how to appeal that decision. ROA.107. Gilani appealed his academic dismissal to the SPC in writing and appeared before the SPC in person. After hearing from Gilani, the SPC voted to deny his appeal and uphold his academic dismissal. ROA.108.

Gilani then appealed the SPC's decision to the Dean of the medical school, Dr. W.P. Andrew Lee, who designated Dr. Dwain Thiele, Vice Provost and Senior Associate Dean for Faculty Affairs and Initiatives, to review the appeal and make a

recommendation. ROA.110, 123. In making his recommendation, Dr. Thiele considered: (1) Gilani's 26-page appeal letter with exhibits submitted to Dr. Lee; (2) all materials considered by the SPC; (3) Gilani's original GI course final exam; and (4) Gilani's remediation GI course final exam. ROA.122. Dr. Thiele, a professor of internal medicine certified by the American Board of Internal Medicine in Gastroenterology, personally verified Gilani's failure of the GI remediation exam; he also found no irregularities with the administration or grading of Gilani's exams. Dr. Thiele therefore recommended Dr. Lee uphold the SPC's decision. ROA.123-24. Dr. Lee accepted Dr. Thiele's recommendation and upheld the SPC's decision to dismiss Gilani from UT Southwestern Medical School, and his academic dismissal became final in all respects on March 25, 2019, when Dr. Lee informed him of the appeal denial. ROA.121. Gilani had an outstanding balance on his UT Southwestern account at the time of his dismissal. ROA.113.

Following the final academic dismissal, Gilani states that he sought to transfer to or re-enroll in a different medical school— Dell Medical School. ROA.206. Accordingly, he requested that UT Southwestern send a letter to Dell Medical School's Office of Admissions summarizing his academic history at UT Southwestern. *Id.* Dean of Medical Students and Associate Dean for Student Affairs Dr. Angela Mihalic sent the letter as requested on July 15, 2019. ROA.112.

II.    **The District Court Dismissed Gilani's Lawsuit for Lack of Subject-Matter Jurisdiction, Failure to State a Claim, and Failure to Make a Prima Facie Case.**

Gilani originally brought this lawsuit challenging his dismissal from UT Southwestern in Texas state court, naming UT Southwestern and the Individual Defendants as defendants and asserting three causes of action: (1) intentional race discrimination under Title VI of the Civil Rights Act of 1964; (2) Fourteenth Amendment due process violations brought through 42 U.S.C. § 1983 ("section 1983 due process claim"); and (3) defamation. ROA.12. Defendants removed the case to federal court and subsequently filed a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c), arguing Gilani's claims were both barred by time and sovereign and qualified immunity. Defendants attached an appendix to their Motion for Judgment on the Pleadings containing the documents referenced and incorporated in Plaintiff's Original Petition. ROA.101-24. Gilani responded to Defendant's Motion for Judgment on the Pleadings and filed Plaintiff's First Amended Complaint. ROA.152-74.

Ultimately, the district court granted in part the Defendants' Motion for Judgment on the Pleadings. ROA.197. Specifically, the district court dismissed Gilani's defamation claim, finding that it fell outside of the limitations period. ROA. 187, 191. The court further dismissed Gilani's Title VI claim against the individual

defendants, a decision with which Gilani agreed. ROA.146, 195 ("However, in short: (a) (i) the Plaintiff pled a claim under Title VI; (ii) the Defendants argue that this claim cannot go forward against the individual defendants *(true enough)* …")(emphasis added). The district also rightly determined that Gilani's section 1983 due process claim could not proceed against UT Southwestern because it was barred by sovereign immunity or against the Individual Defendants as they were entitled to qualified immunity—again, Gilani agreed as to UT Southwestern. ROA.146 ("(b)(i) the Plaintiff pled a claim under 42 U.S.C. § 1983; (ii) the Defendants argue this claim cannot go forward against U.T. Southwestern, since it is not a 'person' for the purposes of the statute *(again, fair enough)*…")(emphasis added).

The district court additionally granted Gilani leave to amend his complaint, to bring suit against the Individual Defendants in their individual capacities and clarify the type of relief he is requesting from each and in what capacity. ROA.193. Gilani subsequently filed a second "Plaintiffs first amended complaint." ROA.198-223. Defendants again filed a Motion to Dismiss Plaintiff's First Amended Complaint. ROA.228-55. The Court granted in part and denied in part Defendants' Motion to Dismiss, dismissing Gilani's procedural and substantive due process claims with prejudice. ROA.389. Finally, the district court determined on summary judgment

that Gilani failed to make a prima facie case of his last remaining claim, discrimination under Title VI by UT Southwestern, thereby dismissing the case in its entirety. ROA.1187.

## SUMMARY OF THE ARGUMENT

Gilani appeals the decision of the district court dismissing his section 1983 due process claim against the Individual Defendants in their official capacities. The court correctly determined that Gilani failed to state a claim under section 1983. Specifically, his pleading showed that his dismissal was an academic decision based on years of poor academic performance, his dismissal was academic—not disciplinary—and was thus not entitled to heightened standards of due process that apply to disciplinary decisions. Further, the district court correctly determined that his dismissal was a professional judgment that was not arbitrary or capricious such that it would allow the court to disturb the academic decision. As such, the court rightly dismissed this claim under Fed. R. Civ. P. 12(b)(6).

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief can be granted is governed by Federal Rule of Civil Procedure 12(b)(6). Under that rule, the plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facial plausibility standard requires plaintiff to assert facts that allow the court "to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Such factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice . . .". *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 557. This Court does not "strain to find inferences favorable to the plaintiff," *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2018) (citation modified), nor is the court required to conjure up unpled allegations in order to save a complaint. *Fernandez-Montes*, 987 F.2d at 284; *Gentilello*, 627 F.3d at 544.

When reviewing a motion to dismiss for failure to state a claim, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). "In so attaching, the defendant merely assists the

plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins*, 224 F.3d at 499. "To avoid a dismissal for failure to state a claim, 'a plaintiff must plead specific facts, not mere conclusory allegations.'" *Dorsey*, 540 F.3d at 338 (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir.1994)) (internal quotations and citation omitted).

This Court reviews dismissals under Rule 12(b)(6) de novo. *Wilson v. Hous. Cmty. Coll. Sys.*, 955 F.3d 490, 494 (5th Cir. 2020).

ARGUMENT

## I.    Gilani waived appellate review of several issues.

### A.    Gilani fails to raise an appealable issue against UT Southwestern, thus UT Southwestern is not a proper party to this appeal.

"Waiver" is not a mere procedural technicality—it is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). That principle governs the disposition of this case. Despite expressly identifying UT Southwestern as a party to this appeal, Gilani has not raised an appealable issue against UT Southwestern. Indeed, at the district court level, Gilani initially asserted three causes of action against UT Southwestern. However, this appeal centers solely on his section 1983 due process claim against the Individual Defendants. Crucially, Gilani

conceded below that as it pertains to UT Southwestern, this claim was barred by sovereign immunity. ROA.375, n.4 ("However, Gilani reiterates in his response that he asserts no section 1983 claims against UT Southwestern. Pl.'s Br. Supp. Resp. Mot. Dismiss 10 [23-1]."); ROA.146 ("'(b)(i) the Plaintiff pled a claim under 42 U.S.C. § 1983; (ii) the Defendants argue this claim cannot go forward against U.T. Southwestern, since it is not a "person" for the purposes of the statute *(again, fair enough)*…")(emphasis added).

That concession was neither equivocal nor inadvertent—it was a deliberate abandonment of any theory of liability against UT Southwestern. Because Gilani voluntarily withdrew his claim in the district court, he cannot resurrect it on appeal. Accordingly, any argument now that seeks to confer liability on UT Southwestern or obtain relief from it is foreclosed.

The issue was waived. The consequences of that waiver are clear and dispositive.

B.    <u>Gilani waived appellate review of the district court's determination that the Individual Defendants are entitled to qualified immunity, thereby waiving any challenge to the dismissal of claims against them in their personal capacities.</u>

The district court properly dismissed Gilani's section 1983 due process claim against the Individuals Defendants on two independent grounds: (1) failure to state a claim in their official capacities; and (2) qualified immunity in their personal

capacities. ROA.387. The district court found that the Individual Defendants properly raised qualified immunity and were entitled to "qualified immunity in their personal capacities." *Id*. Gilani does not meaningfully challenge this conclusion, much less textually address it in his opening brief. *See generally,* App. Br. Importantly, Gilani specifically acknowledges the distinction in a single, throwaway sentence in his Statement of the Case. App. Br. 19 ("…further granted qualified immunity to the individual defendants in their personal capacities."). Thus, it cannot be said that Gilani is unaware that should he wish to challenge the district court's determination in this appeal, he was required to meaningfully and substantively engage in such an argument. *Butler v. E I DuPont de Nemours & Co.*, No. 22-30069, 2022 WL 5059893, at *2 (5th Cir. Oct. 4, 2022) (unpub.) (declining "the invitation to divine the record on [Appellant's] behalf" where Appellant defined the terms at issue and raised conclusory allegations, but failed to otherwise adequately brief an issue). His silence is dispositive.

This Court has long held that issues not squarely addressed in an appellant's opening brief are deemed waived. *Dejoria v. Maghreb Petroleum Expl., S.A.*, 804 F.3d 373, 384 n.12 (5th Cir. 2015) (quoting *United States v. Whitfield*, 590 F.3d 325, 346 (5th Cir. 2009)). Understandable, given "[j]udges are not like pigs, hunting for truffles buried in briefs." *Butler,* 2022 WL 5059893, at *2 (quoting *United States v.*

*Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)). Thus, by failing to contest the Individual Defendants' entitlement to qualified immunity, Gilani has waived any challenge to the dismissal of claims against them in their personal capacities. *Id.* at *2 (citing *JTB Tools & Oilfield Servs., LLC v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) ("Butler failed to adequately brief her argument, and thus we deem that argument waived.")); *P&G v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004)(citing *United States v. Torres-Aguilar*, 352 F.3d 934, 936 n.2 (5th Cir. 2003) (argument deemed abandoned by appellant "only briefly mentioning it in a footnote of his opening brief without providing any legal citation or analysis")).

This waiver carries significant consequences. Gilani acknowledges in his prior briefing that the only relief he may pursue against the Individual Defendants in their official capacities is prospective injunctive relief. ROA.146-47 (… "b)(i) the Plaintiff pled a claim under 42 U.S.C. § 1983; (ii) the Defendants argue this claim cannot go forward against …  the individual defendants in their official capacity due to immunity; but (iii) this misses the point that § 1983 claims *may* go forward against individual defendants, in their official capacity, to a potential granting of prospective injunctive relief and, in their personal capacities, to a potential award of damages") (emphasis in original). Yet, paradoxically, he requests this Court reverse the decision of the lower court and remand, such that he might obtain relief that the law does not

allow. Specifically, he believes he is entitled to "attorneys' fees, costs, expenses, and damages that foreseeably flowed from the wrongful termination of any future medical career, as well as injunctive relief in the form of transcript corrections and release." App. Br. 13. Save for prospective injunctive relief, these remedies are categorically unavailable against defendants sued in their official capacities under section 1983. S*ee Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 n.10 (1989) ("Of course a state official in his or her official capacity, when *sued for injunctive relief*, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (emphasis added). The contradiction reflects a fundamental misunderstanding of the legal framework governing his claim.

Because Gilani has abandoned any argument regarding the Individual Defendants' personal liability, and the relief he now seeks exceeds what is legally recoverable under an official-capacity theory, this Court should affirm the district court's dismissal of all claims against them in full.

### C.     Appellate review of Gilani's Title VI and defamation claims are deemed waived.

"A party waives any argument that it fails to brief on appeal." *Dejoria v. Maghreb Petroleum Expl., S.A.*, 804 F.3d 373, 384 n.12 (5th Cir. 2015) (quoting *United States v. Whitfield*, 590 F.3d 325, 346 (5th Cir. 2009)). As discussed herein, in

addition to his section 1983 due process claim, Gilani also asserted a claim for intentional discrimination under Title VI of the Civil Rights Act of 1964 and a state-law defamation claim. ROA.152-74. The district court dismissed his defamation claim as having been barred by the applicable statute of limitations. Gilani explicitly conceded this point in his prior briefing. ROA.144 ("The Plaintiff concedes that, alone among his pleaded claims, his right to recover on this claim is thus time-barred in a way that can be properly raised and ruled on through the Motion."). For the reasons stated herein, the concession is binding and forecloses any attempt to revive the claim on appeal.

Moreover, Gilani failed to brief or argue his Title VI race discrimination claim in this appeal. His failure to not meaningfully address this claim in his opening brief constitutes waiver.

For avoidance of doubt, the sole claim Gilani has put before this Court is his section 1983 due process claim against the Individual Defendants in their official capacities.

II.    **The district court correctly determined that Gilani's dismissal from UT Southwestern was academic, rather than disciplinary, and correctly found Gilani failed to state a claim that UT Southwestern violated Gilani's procedural due process rights for an academic dismissal.**

The Supreme Court has never held that a person has a Fourteenth

Amendment liberty or property interest in a right to a higher education. *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1035–36 (5th Cir. 2022). Instead, it has assumed, without affirming, the existence of a liberty or property interest in higher education in order to perform the due process analysis. *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 84–85 (1978); *Regents v. Univ. of Mich. v. Ewing*, 474 U.S. 214, 222–23 (1985). The Fifth Circuit has generally followed suit. *Pickett*, 37 F.4th at 1035-36 (5th Cir. 2022); *Shaboon v. Duncan*, 252 F.3d 722, 730 (5th Cir. 2001); *Davis v. Mann*, 882 F.2d 967, 973 (5th Cir.1989). *But see Plummer v. Univ. of Houston*, 860 F.3d 767 (5th Cir. 2017)*, as revised* (June 26, 2017) (recognizing plaintiffs have a liberty interest in a higher education under the Texas Constitution when facing a *disciplinary* decision). Like in *Ewing* and *Horowitz*, this Court need not determine whether Gilani had a protected interest in continued enrollment at UT Southwestern because even assuming such an interest, the pleadings and record show no due process violation. *See Ewing*, 474 U.S. at 222–23; *Horowitz*, 435 U.S. at 84–85.

Due process is not a fixed concept unrelated to context. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). In the context of a public university, what level of procedural protections are required depends on whether the dismissal is academic or disciplinary. *Horowitz*, 435 U.S. at 85–86. Due to the intense factual nature of

disciplinary dismissals, disciplinary dismissals require more procedural safeguards than academic dismissals. *Id.* at 88-89. This is because in a disciplinary proceeding, requiring a hearing where the student can present their side of a factual issue could provide a meaningful hedge against erroneous action. *Id.* at 89.

On the other hand, the decision to dismiss a student for academic deficiencies, particularly in the medical school context, rests on the academic judgment of school officials that a student does not have the necessary ability to perform adequately as a medical doctor and is making insufficient progress to that goal. *Id.* at 89–90. "Such a judgment is by its nature more subjective and evaluative than the typical factual questions presented in the average disciplinary decision." *Id.* at 90. "Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Id.*

For these reasons, due process is satisfied for academic dismissals when the school's decision to dismiss the student is careful and deliberate and when, prior to dismissal, the school fully informed the student of the faculty's dissatisfaction with his clinical progress and the danger this dissatisfaction posed to a timely graduation and continued enrollment. *Id.* at 85. Such is the case here.

Courts may not override a university's academic dismissal of a student "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Sugg v. Midwestern Univ.,* 105 F.4th 345, 353 (5th Cir. 2024) (citing *Ewing*, 474 U.S. at 225).

Here, the district court properly ruled that the pleadings in the present case, along with the attached documents,[1] did not show a violation of due process but instead illustrated that Gilani's dismissal was academic, that he was given all process required, and the school's decision was careful and deliberate. *See Horowitz*, 435 U.S. at 89–90. To the extent Gilani complains that UT Southwestern *misjudged* Gilani's fitness to remain a medical student, the record shows the faculty's decision was made with careful deliberation after review of Gilani's entire academic career at UT Southwestern and without any substantial departure from academic norms. ROA.123-4. Like in *Ewing*, this Court should defer to UT Southwestern's professional judgment. *Ewing*, 474 U.S. at 225.

---

[1] "When reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007)). District courts may properly consider documents not attached to the complaint but referenced within in and attached to a defendant's Rule 12(b)(6) motion. *Inclusive Cmtys. Project., Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

A.    Gilani's dismissal from UT Southwestern was academic, not disciplinary.

Gilani claims he was not given sufficient process prior to his dismissal because his dismissal from UT Southwestern was disciplinary, not academic. App. Br. 26-27. Gilani is incorrect.

The record demonstrates Gilani was dismissed for based on his entire academic history at UT Southwestern. ROA.123-4. Gilani failed his Summer Elective, his Gastrointestinal course, and the remedial exam for his Gastrointestinal course. ROA.102-08. He also demonstrated professionalism deficits during his Summer Elective. ROA.107. Specifically, UT Southwestern alleged Gilani's behavior during his Summer Elective "constitutes a lack of professionalism and does not meet the academic standards required of UT Southwestern medical students." ROA.102.

Being dismissed for receiving failing grades in classes constitutes an academic reason for dismissal. *See Horowitz*, 435 U.S. at 90 (likening an academic dismissal determination to determining the proper grade an individual should receive for a course); *Sugg,* 105 F.4th at 354 (5th Cir. 2024) (noting that failing two classes is undisputably an academic issue). Dismissals for professionalism deficits are likewise considered academic dismissals as such dismissals reflect on an appraisal of the student's conduct or personal qualities necessary to succeed in the field. *Horowitz*,

435 U.S. at 89–90 (stating dismissals are academic when they rest on the academic judgment of school officials that the student does not have the necessary skills to succeed in the field); *see e.g.*, *Shah v. Univ. of Texas Sw. Med. Sch.*, 129 F. Supp. 3d 480, 498 (N.D. Tex. 2015), *aff'd*, 668 F. App'x 88 (5th Cir. 2016) (per curiam); *see also e.g.*, *Aragona v. Berry*, No. 3:10-CV-1610-G, 2012 WL 467069 at *6 (N.D. Tex. Feb. 14, 2012) (finding a dismissal academic when the student was not punished for behavioral misconduct but instead the problems stemmed from his inability to act professionally in his clinical responsibilities).

Gilani protests that his dismissal was actually disciplinary because one of the reasons he failed the Summer Elective was an allegation that he made misrepresentations regarding his research timeline, travel activities, the length of time he was in Uganda, and his activities while he was there. ROA.102. Gilani contends this accusation—although only one of many reasons Gilani failed the Summer Elective—constitutes an allegation of academic dishonesty and thus his dismissal from UT Southwestern was disciplinary. App. Br. 27.

Gilani's argument holds no water for several reasons. First, allegations of "mischaracterizations" are not the same as allegations of academic dishonesty, and UT Southwestern did not frame them as such when considering Gilani's academic record. ROA.102. Like in *Aragona*, Gilani does not allege his dismissal was

punishment for violating a specific rule of conduct and neither does UT Southwestern. *See Aragona*, 2012 WL 467069 at *6; ROA.102-08; *see also Shah*, 129 F. Supp. 3d at 499–500 (finding a decision academic despite plaintiff's allegations that it was based on allegations of plagiarism and cheating when the plaintiff did not indicate that the allegations of cheating or plagiarism factored into UT Southwestern's decision to dismiss plaintiff).

Second, even assuming *arguendo* allegations of "mischaracterizations" constitute allegations of disciplinary misconduct, the mere inclusion of one allegation of potential disciplinary misconduct does not transform an academic decision into a disciplinary one. Gilani argues the "inherently disciplinary nature of the alleged misconduct" transforms an academic decision into a disciplinary decision. App. Br. 27-28. This argument fails because (1) even assuming *arguendo* the allegations of "mischaracterizations" were disciplinary allegations, such "mischaracterizations" were only one of many reasons Gilani failed the Summer Elective; and (2) Gilani's failure of the Summer Elective was only one of many reasons for Gilani's ultimate dismissal from medical school. ROA.102-08.

Gilani was dismissed from medical school for an overwhelming number of academic reasons. "Just because some actions are *also* grounds for discipline, however, does not mean they are not requirements for passing the course, which is

an academic outcome." *Sugg*, 105 F.4th at 354. "Courts often consider this distinction in evaluating the performance of a student in the clinical phase of healthcare education." *Id.* at 354; *see, e.g.*, *Ewing*, 474 U.S. at 227 n.13 (holding that the decision to dismiss a medical resident based on, *inter alia*, lack of judgment and an inability to set priorities, was academic).

Here, like in *Sugg*, Gilani was dismissed from UT Southwestern following his failure of his entire first semester of medical school, taking a leave of absence, remediating his first semester, and then failing two more courses, and failing the remediation exam. ROA.102-08; *Sugg*, 105 F.4th at 354. Also like in *Sugg*, Gilani failed the Summer Elective because he did not fulfill multiple course requirements. ROA.102; *Sugg*, 105 F.4th at 354. For example, Gilani was only in Uganda for only two weeks of the approved eight-week study period and spent the remainder of the time traveling to other countries and performing unauthorized activities without receiving appropriate approval. ROA.102. Gilani also failed to perform the research required to complete his proposed research project entitled "Trends, Causes, Risk Factors, and Variables of Mortality Among Children under 5 years old in Bwindi, Uganda from 2008 to 2018." ROA.102. UT Southwestern found Gilani's conduct during his Summer Elective and upon his return raised other professionalism concerns, including failure to fulfill his responsibilities in a timely manner, failure to

accept constructive feedback, and failure to maintain communication with his course director. ROA.102. Such failures constitute overwhelming academic reasons for dismissal. *See Horowitz*, 435 U.S. at 89-90.

Third, Gilani's main support for his allegation that he was dismissed for disciplinary misconduct is a non-binding state case where the individual was explicitly dismissed for cheating on an exam. *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 931 (Tex. 1995); App. Br. 24, 25, 26, 27, 28, 33, 38, 41. Unlike the student in *Than*, Gilani was dismissed for much more than just "misrepresentations" about his research timeline. ROA.102-08. Gilani acknowledges *Than* is not binding. App. Br. 28. *Than* interprets the Texas Constitution's due course of law provision, not the federal Fourteenth Amendment due process provision at issue here. *Than*, 901 S.W.2d at 929; App. Br. 12.

Gilani's dismissal fits much more neatly into this circuit's precedent determining dismissals based on academic and professional deficiencies are academic dismissals, even if some of the alleged conduct could constitute a conduct violation. *See e.g., Sugg*, 105 F.4th at 354 (finding a dismissal academic when the plaintiff was dismissed for failing two classes, even when some of the behavior that led to the plaintiff failing the classes could have also been subject to discipline); *Shaboon*, 252 F.3d at 731 (finding a dismissal was academic "even though [the

student's] intransigence might suggest her dismissal was disciplinary" when the bases for dismissal involved missing clinical rotations and refusing to cooperate with the school's attempts at assistance); *Davis*, 882 F.2d at 969 n.4 (finding a dismissal academic when a dental resident was dismissed for performance deficiencies including tardiness, missed appointments with patients, and being "tied up somewhere [he] was not supposed to be"); *Shah*, 129 F. Supp. 3d at 499 (finding a dismissal academic when the student was dismissed because the professors determined he failed to demonstrate the adequate professional or personal attributes necessary to practice medicine).

### B.     The pleadings show Gilani received more than sufficient process for an academic dismissal.

To satisfy due process for academic dismissals, the school must notify the student of the basis for dismissal. *Horowitz*, 435 U.S. at 85. The school's decision must be careful and deliberate. *Id.* at 85. The school is not required to offer the student a hearing or a right to appeal. *Id.* at 85; *Davis* 882 F.2d at 975; *Shah*, 129 F. Supp. 3d at 500.

The record shows UT Southwestern satisfied this burden and offered more due process than required for an academic decision. *See* ROA.123-24. Gilani was repeatedly notified of his academic deficiencies and given opportunities to respond and appeal.

Gilani received a letter on October 10, 2018, from the Student Promotions Committee that informed him that UT Southwestern was dissatisfied with his academic and professional progress after the Summer Elective and placed him on Academic Warning. ROA.102-03. The letter explained that this decision was "[b]ased on a careful review of [Gilani's] record." ROA.102. The letter explained that any further deficiencies would prompt immediate review and could lead to dismissal from UT Southwestern. ROA.102. The letter also detailed Gilani's right to appeal this decision. ROA.102-03.

A few months later, on December 5, 2018, Gilani received another letter from the Student Promotions Committee concerning his failure of his second-year Gastrointestinal System course. ROA.104. This letter reminded Gilani that he was placed on Academic Warning less than two months prior, which meant that any additional deficiencies in his performance could lead to dismissal from UT Southwestern. ROA.104. This letter stated that "[b]ased on a careful review of [Gilani's] entire academic performance, the committee decided to dismiss [him] from medical school." ROA.104. The letter also detailed the process by which Gilani could appeal this decision. ROA.104.

Gilani took advantage of the opportunity to appeal, which included giving a presentation and letter to the SPC. ROA.105. Gilani's appeal was successful, and the

SPC reversed its decision dismissing Gilani from UT Southwestern on the condition that Gilani successfully remediate the Gastrointestinal Systems course. ROA.105. This letter also detailed Gilani's right to appeal. ROA.105-06.

Gilani did not successfully remediate the Gastrointestinal Systems course and failed the remediation exam. ROA.107. On January 22, 2019, Gilani submitted an "Open Letter" to various members of the SPC and UT Southwestern administration officials raising complaints about the Committee's prior decisions and his failed remediation in the Gastrointestinal Systems course. ROA.108.

On January 23, 2019, Gilani received another letter from the SPC outlining his history of academic deficiencies including his failure to pass the Gastrointestinal Systems course for a second time and his failure to submit a detailed progress report to the course director, which was a requirement of the remediation. ROA.107. "Based on a careful review of [Gilani's] entire academic performance, the Committee decided to dismiss [Gilani] from medical school." ROA.107. The letter acknowledged the "Open Letter" Gilani sent the day prior and directed Gilani to the proper procedure for appealing the SPC's decision. ROA.107-08.

Gilani again took advantage of the appellate procedure provided by UT Southwestern and appealed the SPC's January 23, 2019 decision dismissing him from medical school. ROA.109. As part of the appeal process, the SPC considered

Gilani's entire academic record, a letter Gilani submitted in support of his appeal, and his oral presentation. ROA.109. The SPC issued a letter to Gilani on February 15, 2019, denying Gilani's appeal and outlining the process for appealing its decision to the Dean of the medical school, Dr. Lee. ROA.109.

Gilani appealed the SPC's February 15, 2019 ruling to Dr. Lee, who designated Dr. Thiele to review the appeal and make a recommendation. ROA.110. On March 25, 2019, Dr. Lee sent Gilani a letter stating Dr. Lee decided to adopt Dr. Thiele's recommendation and uphold the decision dismissing Gilani from medical school because Gilani's "academic performance does not meet the standards required of UT Southwestern medical students." ROA.111.

Gilani's dismissal was the result of a years-long process in which UT Southwestern provided repeated notices to Gilani of his academic failures and the potential consequences and Gilani repeatedly failed to meet UT Southwestern's academic expectations. ROA.102-11. This is all that is required by law for an academic dismissal. *Shaboon*, 252 F.3d at 730 (citing *Horowitz*, 435 U.S. at 85). UT Southwestern went above and beyond its constitutional duties by providing Gilani with a chance to appeal each decision by the SPC and several opportunities to present testimony. *Horowitz*, 435 U.S. at 85.

C.     UT Southwestern's dismissal of Gilani's was careful and deliberate and not a substantial departure from academic norms.

An academic dismissal satisfies due process if the ultimate decision was careful and deliberate in light of the student's entire academic record. *Horowitz*, 435 U.S. at 85. To the extent Gilani argues UT Southwestern's decision to dismiss him was not careful and deliberate because UT Southwestern wrongly determined that he failed the Summer Elective, Gastrointestinal Systems course, and the remediation exam, such claim fails. App. Br. 32-35.

Gilani alleges as support for his due process claim that he was the only student denied a two-point curve and that his remedial exam was hand-graded. Even taking these allegations true, such facts do not show such a substantial departure from normal procedures as would amount to a procedural due process violation. It is not a substantial departure from academic norms to deny a student on Academic Warning a two-point curve. *See Ewing*, 474 U.S. at 227 (holding that a university's decision to allow other students, but not plaintiff, to retake an exam was not beyond the pale of reasoned academic judgment when considering his prior academic failings). Likewise, hand-grading a remediation exam is not so far outside the scope of accepted academic norms as to be considered a substantial departure. *See id.*

Similarly, Gilani's allegation that he should not have received a failing grade for his Summer Elective does not support a claim for a procedural due process violation. The existence of a fact question regarding Gilani's academic performance

that UT Southwestern resolved against him does not make UT Southwestern's decision any less careful or deliberate or place it within the purview of the courts. *Sugg*, 105 F.4th at 355.

To the contrary, the pleadings "unmistakably demonstrate[], however, that the faculty's decision was made conscientiously and with careful deliberation, based on an evaluation of the entirety of [Gilani's] academic career." *Ewing*, 474 U.S. at 225. The notices sent to Gilani repeatedly stated Gilani's dismissal was based on a careful review of his academic record. ROA.102-111.

Moreover, at each step Gilani was given ample process to respond to UT Southwestern's dissatisfaction with Gilani's academic progress. ROA.102-111. Gilani could have appealed the SPC's decision regarding his performance in the Summer Elective, but he did not. ROA.107. Gilani was given the opportunity to appeal, and did successfully appeal, his initial dismissal from UT Southwestern. ROA.203. Notably, this appeal was granted at least in part because Gilani accepted full responsibility for his deficiencies in the Summer Elective and his subsequent failure in the Gastrointestinal Systems course—deficiencies which Gilani now vehemently disavows. ROA.105. Gilani was then permitted to appeal, and did appeal, the subsequent decision dismissing him from UT Southwestern medical school to the SPC and then to Dr. Lee. ROA.107-111.

These strong procedural safeguards are further evidence that UT Southwestern's decision to dismiss Gilani was careful and deliberate. *Sugg*, 105 F.4th at 355. Even if this Court finds that UT Southwestern's actions were not perfect, this Court's precedent requires deference to the university's decision-making. *Id.* 355.

### III.    The district court correctly found Gilani failed to state a substantive due process claim.

#### A.    There is no substantive due process right to continued higher education at a public university.

The Supreme Court has never recognized a substantive due process right to continued higher education at a public university, *Shah*, 129 F. Supp. 3d at 497, and its holding in *Horowitz* and its progeny mandate deference to academic decisions. *Horowitz*, 435 U.S. at 92; *Ewing*, 474 U.S. at 225. In so holding, the Court suggested that a substantive due process right can be only presumed where a plaintiff has plausibly alleged that an academic dismissal is clearly arbitrary or capricious. *Ewing*, 474 U.S. at 225; *see also, Doe v. Harell*, 841 F. App'x 663, 670 (5th Cir. Jan. 7, 2021) (unpub.) (citing *Horowitz*, 435 U.S. at 91). Alternatively stated, an academic dismissal can be overturned only if the university's conduct is "beyond the pale of reasonable academic decision-making" and "such a substantial departure from accepted academic norms as to demonstrate that the [officials] responsible did not actually exercise professional judgment." *Ewing*, 474 U.S. at 225; *Doe*, 841 F. App'x

at 670. In this Circuit, "conclusory allegations" regarding the lack of professional judgment are insufficient to maintain a substantive-due-process claim. *Patel v. Tex. Tech. Univ.*, 941 F.3d 743, 748 (5th Cir. 2019).

Here, Gilani's own Complaint established that he was dismissed based on his repeated failures to meet the bare minimum of academic standards, and this Court should reject Gilani's invitation to deviate from well-reasoned precedent of granting wide deference to trained academic evaluators and their academic decisions.

> B.   Even if there was a substantive due process right to higher education, the district court properly found Gilani failed to state a substantive due process claim because the pleadings show Gilani's dismissal from UT Southwestern was not clearly arbitrary or capricious.

Assuming, without conceding, that the lower court could properly entertain a substantive due process right, Gilani's claim nonetheless fails. Gilani's Complaint is devoid of any allegation that his dismissal was arbitrary or capricious, or that it constituted a departure from accepted academic norms. Nor does he allege that the faculty failed to exercise professional judgment. Instead, his assertions, even if true, do not meet the high standard for a substantive due process violation. ROA.386.

The Supreme Court has emphasized that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). To violate substantive due process, an "abuse of

power" must "shock[] the conscience." *Id.*; *see also Dung Quoc Pham v. Blaylock*, 712 F. App'x 360, 364 (5th Cir. 2017) (citing *Rochin v. California*, 342 U.S. 165, 173 (1952)). This Court has similarly emphasized that it is not the role of federal courts to second guess the academic decisions of the universities absent conduct so extreme that it demonstrates a fundamental lack of professional judgment. *Phelan v. Norville*, 460 F. App'x 376, 381 n.6 (5th Cir. 2012). Gilani's allegations fall short of this demanding threshold.

The Complaint itself establishes that Gilani was afforded multiple opportunities to remediation and review, none of which rise to a constitutional violation. Here, Gilani asserts, first, that his academic warning based on his failed summer research course was "unjustified, unearned, and not in response to any evidence that he violated school policy or academic practice, but was instead falsely engineered." App. Br. 35. Yet, his own allegations concede that he was provided notice and an opportunity to appeal this warning, which he declined. ROA.202, ¶23. A disagreement with faculty judgement, particularly where avenues for appeal were provided, cannot constitute a substantive due process violation. *Horowitz*, 435 U.S. at 86.

Second, Gilani challenges his GI-block exam grade as "falsely engineered" because it was hand-scored and allegedly excluded from the grading curve. App. Br.

35. He claims that if proven, this would establish a direct challenge to professional judgment, which suggests "a fundamental lack of rational basis for the dismissal." This argument fails to establish a substantive due process claim because (1) "rational basis" is not the standard governing academic dismissals—far from it—and even if a professional judgment was mistaken, such mistake does not rise to the level of arbitrary and capricious behavior, *Ewing*, 474 U.S. at 22–26; *Doe*, 841 Fed. Appx. at 670; and (2) viewing the case from Gilani's perspective, it does not logically follow that the decision to hand-grade a remediation exam is so fundamentally unfair that it shocks the consciences. Rather, it reflects a deliberate effort to ensure the accuracy and fairness in evaluating his performance. Courts defer to the decisionmaker unless the decision is such a substantial departure from accepted academic norms as to demonstrate that no professional judgment was exercised at all. Far from shocking the conscience, this individualized attention demonstrates a commitment to getting the outcome right.

Third, Gilani alleges that his substantive due process rights were violated because the appeals process was a "sham" due to the SPC acting as its own appellate forum, which is allegedly in "violation of UTSW's express, written policies[]," App. Br. 16., and because internal reviewers misstated basic facts about his dismissal, App. Br. 35. At the outset, these allegations sound in procedural due process, not

substantive due process and thus, this argument fails.

However, should the Court entertain this reasoning, Gilani's allegation that the appeal process was a sham is both untrue and expressly contradicted by the record. Specifically, the university's official policies regarding academic dismissals identifies the process for students who wish to challenge a grade. ROA.119. If a student is not satisfied with a faculty member's decision, the student may submit a grievance to the department chair. *Id.* "When a grade or evaluation results in an academic deficiency that prompts review by the Student Promotions Committee, this grade grievance procedure does not apply." *Id.* "A student may submit a *written* appeal to the chair of the Student Promotions Committee within 10 business days of the student's receipt of the notification of the Student Promotions Committee decision." ROA.120. If the student is unhappy with the SPC's appeal decision, the student can appeal for a second time to the Dean of the medical school. The Dean can appoint an ad hoc committee or designee to review the written appeal. *Id.* Despite Gilani's protestations, a formal, verbal hearing is not required. *Id.*

It would appear that Gilani believes the district court was precluded from considering this evidence because his allegations were required to be taken as true. App. Br. 29, 36. However, because UT Southwestern's adherence to university policy was placed directly at issue in Gilani's Complaint and central to his claim, his

allegations that contradict the record lost their presumption of truthfulness, and the district court was entitled to consider this evidence. Indeed, documents attached to a motion to dismiss "are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [his] claim[s]." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

Even so, it is well settled that conclusory allegations of bias without factual support fall short of the "conscience-shocking" standard. *Davis v. Mann,* 882 F.2d 967, 975 (5th Cir. 1989). The Complaint itself undermines any claim of arbitrariness. Gilani was placed on academic warning, granted a leave of absence, permitted to retake and remediate course after course, and provided repeated opportunities to appeal academic decisions. ROA.200-10, 223-24. Despite his assertions, the Complaint establishes that he failed his first year of medical school, his summer research elective, and his GI block—consistently failing to meet the school's minimum academic threshold. ROA.202, at ¶¶21, 26-28. The SPC afforded him the chance to appeal. ROA.202, at ¶¶ 22-24. Far from shocking the conscience, this pattern reflects not arbitrary decision making, but a deliberate, structured process consistent with professional norms.

Ultimately, the Complaint establishes years of substandard academic performance addressed through measured and deliberate decision making by faculty

and committees. No allegation plausibly demonstrates an abuse of power so egregious as to shock the conscience. Accordingly, Gilani's procedural and substantive due process claims fail as a matter of law.

## CONCLUSION

The Court should affirm the district court's judgment.

Respectfully submitted.

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Brianna M. Krominga*
**BRIANNA M. KROMINGA**
*Lead Attorney*
Texas Bar No. 24103252
**ALI THORBURN**
Texas Bar No. 24125064
Assistant Attorneys General
General Litigation Division
P.O. Box 12548

Austin, Texas 78711
(737) 330-4404 – Phone
(512) 320-0667 – Fax
Brianna.Krominga@oag.texas.gov
Ali.Thorburn@oag.texas.gov
***Counsel for Appellees***

**CERTIFICATE OF SERVICE**

I certify that a copy of the above Appellee Brief was served on the 10th day of September, 2025, on all parties who have entered an appearance, using the CM/ECF system:

Elizabeth Alvarez
GUEST & GRAY, P.C.
315 S. Bois D'Arc St.
Forney, Texas 75126

*s/ Brianna M. Krominga*
**BRIANNA M. KROMINGA**
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

Pursuant to 5TH CIR. R. 32.2.7(c), the undersigned certifies this brief complies with the type-volume limitations of FED R. APP. P. 32(a)(7).

1.      Exclusive of the portions exempted by 5TH CIR. R. 32.2, this brief contains 8,019 words printed in a proportionally spaced typeface.

2.      This brief is printed in a proportionally spaced, serif typeface using Equity Text A 14-point font in text and Equity Text A 12-point font in footnotes produced by Microsoft Word software.

3.      Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4.      Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5TH CIR. R. 32.2, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

s/ *Brianna M. Krominga*
**BRIANNA M. KROMINGA**
Assistant Attorney General